Jerry McELYEA and Jewel McElyea, Plaintiffs,

v.

NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, Defendant.

Civ. A. No. 89–2986.

United States District Court, E.D. Pennsylvania.

March 6, 1991.

A. Terry Daly, Philadelphia, Pa., for plaintiffs.

Michael D. Brophy, Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, Senior District Judge.

In this case, plaintiffs seek compensation for injuries sustained when a vehicle manufactured by defendant Navistar, and driven by plaintiff Jerry McElyea (McElyea), left the road and struck a tree stump.[1] McElyea was allegedly ejected from the vehicle on impact and is now paralyzed. Thus, this case is a "second collision" or "crashworthiness" case, in that plaintiffs allege that a design defect in the vehicle caused enhanced injury in the accident but do not allege that any defect in the vehicle caused it to leave the road or to strike the tree stump.[2]

Trial of this action is scheduled to begin on March 18, 1991. Recently filed motions, however, require immediate disposition, since the issues involved therein substantially affect when, or whether, the case will actually go to trial.

## I PLAINTIFF'S MOTION TO EXTEND THE TIME OF DISCOVERY

■ The record of this case is replete with problems relating to discovery and to scheduling this case for trial.[3] A brief history of this case from the time counsel was first summoned for a conference before the Court will explain the origin of the present dispute and will serve to put the discussion of the instant motion in context.

A scheduling order entered by Magistrate Richard A. Powers in September, 1989, contemplated an end to all discovery by May 1, 1990, with the case ready for trial after June 15, 1990. It is the practice of the Court to schedule a pretrial conference for the purpose of setting a trial date as soon as possible after a case is expected to be ready for trial, unless we are notified that discovery has not been completed or that, for some other reason, the case is not ready for trial.

Our internal records for this case reveal that a final pre-trial conference in this case was originally scheduled for early July, 1990, but was continued to August 16 to accommodate other trial commitments of counsel, first plaintiff's counsel, and, later, defendant Navistar's counsel. No party to this case advised the Court that it was not ready for trial when a continuance of the conference was sought.

At the August conference, the Court was informed that there were a number of disputed issues involving discovery and the scheduling of further proceedings in the case which had to be resolved before the case could be tried. In an effort to reach an amicable resolution of such issues without the need for additional motions relating thereto [4], counsel conferred out of the presence of the Court for most of the day.

By the time counsel left the conference, these issues had purportedly been resolved. Counsel reported orally on the agreement which had been reached and represented that a stipulation memorializing that agreement could be expected for the Court's approval in September.

Instead, the Court received a letter, dated September 13, 1990, from counsel for

---

1. Plaintiff Jerry McElyea claims damages for his serious physical injuries. Plaintiff Jewell McElyea has a derivative claim for her expenses associated with McElyea's injuries and for loss of consortium.

2. Plaintiffs alleged in the Complaint that a defective tire caused the vehicle to leave the road. Consequently, Cooper Tire and Rubber Company, the manufacturer of the tire was originally a defendant in the case. Plaintiffs and defendants recently agreed to a voluntary dismissal of all claims against Cooper. Their joint stipulation of dismissal was approved by the Court and entered on January 3, 1991. (*See,* Doc. # 44).

3. There were at least eight motions to compel discovery or for sanctions filed either by plaintiffs or by defendants between the time the case was removed to this Court in April, 1989, and August, 1990.

4. Plaintiffs filed a motion for sanctions for failure to respond to discovery one day before the pre-trial conference scheduled for August 16, 1990, despite the fact that discovery should have been completed and the case ready for trial by the end of June, and despite the fact that the Court originally scheduled the August conference for early July.

Navistar. In the letter, which was likewise copied to all counsel, Navistar's counsel related the subsequent history of the agreement which had been reached at the August conference, stating that he had prepared the stipulation and had forwarded it to Cooper Tire's counsel. Navistar's counsel later called counsel for Cooper, who advised that he had signed the stipulation and had forwarded it to plaintiff's counsel, who had not signed it and would not disclose when, or whether, he would do so. Consequently, counsel for Navistar was requesting another conference to determine the status of the purported agreement. Accordingly, we scheduled a conference for October 16, 1990.

On the day before the conference, we received a faxed letter from an attorney who related that he had agreed to represent plaintiffs, and who requested that the conference be continued, inasmuch as he was in the middle of a trial term and could not attend. We felt that a continuance to accommodate plaintiffs' new counsel, who had not yet entered his appearance in the case,[5] was unwarranted, since the purpose of the conference was to determine why plaintiffs' original counsel had failed to abide by the agreement reached at the August conference. That agreement had been reached with counsel of record and appeared to bind plaintiffs regardless of the presence or absence of new counsel. Thus, we did not consider necessary the presence of an attorney who was not yet counsel of record for the plaintiffs and who had not participated in the prior conference and in negotiating the agreement there reached. Moreover, although the conference had been noticed at least two weeks before the date it was to be held, we knew nothing of plaintiffs' hiring of new counsel, who wished to participate in the conference but who could not attend on the scheduled date, until the day before the conference was to be held. Consequently, we decided that the conference should go forward with existing counsel of record.

On the day of the conference, however, we received a telephone call from the office of plaintiffs' original counsel, informing us that he was before a state court judge for a long-scheduled trial. Counsel had not previously notified this Court that he had a likely, or even potential, conflict regarding the date of the conference in this case. Obviously, we had no choice but to cancel the conference.

The next day, October 17, 1990, counsel for defendant Navistar submitted a motion for a new scheduling order, which incorporated the terms of the agreement reached in August but never finalized. (*See*, Motion of Defendant, Navistar, for Entry of Pre–Trial Scheduling Order, Doc. # 32).

New counsel for plaintiffs simultaneously responded to the motion and entered an appearance on November 5, 1990. In response to the motion, plaintiffs agreed to defendant Navistar's proposed scheduling order for the most part, but suggested certain modifications. Plaintiffs also requested that another status conference be scheduled. (*See*, Request for Status Conference and Reply of Plaintiffs to Motion of Navistar for Entry of Pre–Trial Scheduling Order, Doc. # 35).

After careful consideration of Navistar's motion and plaintiffs' response thereto, we modified the order proposed by Navistar to incorporate three of plaintiffs' four requested changes. We declined, however, to permit the assertion of additional defect theories against Navistar, and likewise declined to permit submission of additional expert reports, generally, as plaintiffs requested. It appeared that granting such permission could have had the effect of reopening unlimited discovery. Absent any substantive reason asserted by plaintiffs for allowing additional expert reports, and given the difficult course of discovery in this case heretofore, we determined that if trial were to commence on or about the date which plaintiffs had requested, *i.e.*, March 15, 1991, additional discovery would

5. In fact, new counsel did not enter his appearance until November 5, 1990. Original counsel, who has not actively participated in the case since that time, has never withdrawn his appearance.

have to remain within the limits to which plaintiffs had agreed in August.

Consequently, on November 19, 1990, we signed a new Scheduling Order which, *inter alia*, permitted limited additional discovery, to be completed by December 1, 1990; specially listed the trial to commence on March 18, 1991; set deadlines for motions in limine and responses thereto; prohibited the assertion of additional defect theories against defendant Navistar and permitted plaintiffs' expert to provide a supplemental report, limited to comments upon Navistar documents allegedly supportive of his previously disclosed technical theories of defect. (*See*, Scheduling Order, Doc. # 38).

Early in December, 1990, we received a letter from plaintiffs' counsel which informed us that he had not received the Scheduling Order in time to comply with the December 1 discovery deadline. Counsel also stated that he had engaged the services of a new expert witness and that he planned to engage the services of a biomechanic to provide an opinion on the mechanism of injury. Counsel, therefore, requested an extension of time until January 2, 1991 to provide the additional expert reports.

Counsel's letter and the requests contained therein ignored completely the fact that the recently entered scheduling order foreclosed plaintiffs' ability to pursue the new discovery for which counsel was requesting an extension of time. Neither the letter from plaintiffs' counsel, nor any subsequent document filed prior to the instant motion, requested a change in the Scheduling Order. Counsel for plaintiffs simply proceeded as if the Order did not exist. In addition to the contents of the above-referenced letter, which took no account of the limits placed on expert discovery, plaintiffs failed to respond to the several motions in

limine which were filed by Navistar by the date specified in the Scheduling Order, and have filed no motions in limine themselves.[6]

On February 4, 1991, plaintiffs, at last, filed the instant Motion to Extend the Time of Discovery (Doc. # 46).[7] In this motion, they assert that a review of the case by a new expert has revealed that their original theory of liability may be in error and that they have now been provided with an additional theory regarding the cause of plaintiff Jerry McElyea's injuries. Despite the representation in counsel's letter of December 3, 1990, however, that an expert report could be prepared and submitted to defendant's counsel by January 2, 1991, plaintiffs assert, in the motion, that the new expert has begun evaluation of the facts and requires additional time for discovery. Plaintiffs, therefore, request ninety days to complete discovery, with motions in limine to be filed 120 days from the date the new order is entered.

Plaintiffs also assert that the schedule which they propose will not unduly prejudice defendant, and that they will not object to an extension of time for discovery for defendant to the extent necessary to inquire into plaintiffs' new theory of liability.

Since plaintiffs have failed to file a brief in support of their motion as required by E.D.Pa.Loc.R.Civ.P. 20(c), the legal authority, if any, upon which they rely is unclear. It appears, however, that plaintiffs are relying exclusively upon their assertion that an extension of discovery will not prejudice defendant, as well as their asserted willingness to accommodate defendant regarding additional time for discovery which it may need, as reasons enough to grant the motion.

Defendant Navistar, however, strenuously objects to the reopening of discovery,

---

**6.** It is the practice of this Court to grant, as uncontested, motions to which no brief in opposition is timely filed, as permitted by Ed.Pa. Loc.R.Civ.P. 20(c), unless the party opposing the motion timely requests additional time to respond thereto. It is also our practice, however to reserve formal rulings on motions in limine until the final pretrial conference. Hence, no

order disposing of defendant's motions in limine has yet been entered.

**7.** At a conference before the Court on January 17, 1991, plaintiffs counsel revealed, for the first time, that plaintiffs were seeking additional discovery from Navistar in connection with a new expert's theory of liability.

contending that granting plaintiffs' motion would effectively return the case to the status of one recently filed. Moreover, defendant argues that it would be greatly prejudiced by the reopening of discovery and by permitting plaintiffs to now assert a completely new theory of liability in that all of its expert preparation for the liability phase of the case would likely be rendered irrelevant and unusable, necessitating, in effect, preparation of a new case. The trial would be substantially delayed and defendant would be forced to incur additional expense for trial preparation.

■ Absent a showing by the plaintiffs that denial of their motion to extend discovery would deprive them of crucial evidence or would result in fundamental unfairness, the Court has broad discretion in deciding whether to permit additional discovery. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81 (3d Cir.1987); *In re Fine Paper Antitrust Litigation*, 685 F.2d 810 (3d Cir.1982). In their motion, plaintiffs have not even attempted to demonstrate that additional discovery is essential to their case, much less that more diligent pursuit of this matter was impossible. *See, Hewlett v. Davis*, 844 F.2d 109, 113 (3d Cir.1988), "[I]mplicit in ... a showing [that the court's action in denying additional discovery resulted in actual and substantial prejudice] is proof that more diligent discovery was impossible." (Citation omitted).

Given the difficult history of this case, as well as the approach taken by plaintiffs' counsel, both old and new, to preparation of this case for trial, we are not inclined to exercise our discretion in favor of permitting additional discovery. The approach and tactics employed by plaintiffs' counsel which we find objectionable include the following: (1) early discovery motions which apparently could have been avoided with plaintiffs' cooperation, since plaintiffs filed no responses thereto, resulting in orders granting such motions as unopposed; (2) plaintiffs' failure to abide by agreements reached with opposing counsel; (3) plaintiffs' failure to conform to the local rules of civil procedure; (4) plaintiffs' last minute cancellation of a long-scheduled conference; (5) the delay involved in seeking to reopen discovery. Moreover, as noted, plaintiffs made no attempt to establish a proper basis for limiting the breadth of our discretion in this matter by demonstrating a real need for additional discovery, as described in relevant precedent.

In light of the problems already encountered in this case, we are left with the inescapable conclusion that if we now permit plaintiffs to reopen discovery in order to attempt to assert and support a new theory of liability we would thereby permit indefinite delay in the resolution of this matter. We have seen nothing in the history of this case to indicate that reopening discovery would not begin a fresh round of disputes, delays and changes of position, all accompanied by a perverse unwillingness on the part of plaintiffs' counsel to timely communicate with opposing counsel and the Court regarding such matters.[8] Consequently, we will deny plaintiffs' motion to reopen discovery.

## II PROCEDURAL MATTERS RELATING TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Plaintiffs' Motion to Respond Out of Time

■ The first matter to be resolved in connection with defendant's motion for summary judgment concerns whether we should consider plaintiffs' written response thereto.

Defendant Navistar's motion was filed and served on January 24, 1991. By the most generous possible computation of time, *i.e.*, allowing plaintiffs the ten days for response provided by Loc.R.Civ.P. 20(c), without counting Saturdays and Sundays

---

**8.** Our impression in this regard was confirmed by plaintiffs' response to defendant Navistar's motion for summary judgment, which will be discussed in detail, *infra*. There, plaintiffs appeared to have expanded the scope of their motion to reopen discovery, thereby reinforcing our impression that the end of discovery in this case will be an ever receding target as long as the defendant develops and discloses to plaintiffs plausible defenses to whatever theories of liability and damages might be developed and asserted by plaintiffs.

as provided by Fed.R.Civ.P. 6(a), and allowing an additional three days for service by mail as provided by Rule 6(e), plaintiffs' response to the motion was due by February 12, 1991, on which date a conference before the Court had been scheduled.

Since plaintiffs had neither served nor filed a written response by that date and, indeed, had not yet prepared a written response, we directed plaintiffs' counsel to respond orally, on the record. We deemed it preferable to hear argument rather than to consider the motion unopposed and grant it on that basis.

Subsequently, plaintiffs filed a written response, as well as a motion to file said response out of time, which defendant opposes. Review of the written response reveals that the issues raised and arguments made therein do not differ in kind from those presented by the plaintiffs at oral argument. Although one fairly significant change in plaintiffs' position emerged in their written response, the underlying concepts, even with respect to that issue, remain the same. Thus, we conclude that the late filing of plaintiffs' written response does not prejudice defendant. Moreover, as noted, we deem it preferable to have before us as much information and argument as possible when considering motions, particularly where, as here, the outcome of the motion determines whether the case will be tried. Hence, we will grant plaintiffs' motion for permission to file a response out of time, and will consider the substance thereof.

B. Timing of Defendant's Summary Judgment Motion

██ The second procedural issue we address concerns plaintiffs' argument that the motion for summary judgment is premature in light of their motion to reopen discovery. Although we have already resolved that issue in favor of defendant, we revisit the matter here because, in response to the motion for summary judgment, the motion to reopen discovery took on an entirely different character and became, in our view, a new motion.

At the time defendant's motion for summary judgment was filed, there was no motion pending relating to plaintiffs' intention to take additional discovery, although both defendant and the Court were aware of such intention from correspondence and from the conference held on January 17, 1991. (*See*, n. 7, *supra*). Moreover, it initially appeared, based upon the record as it existed when defendant's motion was filed and after hearing argument on the motion, that the substance of defendant's motion for summary judgment would be unaffected by the reopening of discovery and the assertion by plaintiffs of an additional theory of liability, notwithstanding plaintiffs' contention at oral argument that no decision on the summary judgment motion should be made until we acted on plaintiffs' motion to reopen discovery.

Had we decided to permit plaintiffs to reopen discovery, we would likely have reserved decision on the motion for summary judgment in order to be certain that the essential facts and legal positions asserted by both parties would not have been affected thereby. We never suspected, however, that one of plaintiffs' principal arguments in opposition to the motion for summary judgment, as set forth, for the first time, in their written response thereto, would depend upon an expansion of the scope of their motion to reopen discovery in an attempt to create new and additional facts, which could then become disputed issues of fact, precluding summary judgment.

Prior to their written response to defendant's motion, we understood plaintiffs' theory of liability to be that McElyea was injured when he was ejected from the vehicle. We also understood plaintiffs' request to take additional discovery to concern only how such ejection occurred.[9]

---

**9.** As noted previously, however, in their motion to reopen discovery, plaintiffs assert only that their original theory as to the cause of injury, "may be in error", and that they have been provided with an additional causation theory from a new expert. (*See,* Motion to Extend the Time of Discovery, Doc. # 46, ¶¶ 1 & 2.) Plaintiffs provided no detail regarding such new theory. Since their motion was so vague, was unaccompanied by a supporting brief, and was

Plaintiffs now assert, however, that the outcome of defendant's motion would be substantially affected if their motion to reopen discovery were granted.

This assertion on plaintiffs' part highlights an underlying problem with this case and provides additional support for our decision not to exercise our discretion in favor of reopening discovery. In the absence of an actual and specific showing by plaintiffs that failure to permit them to take additional discovery would deprive them of crucial evidence, indeed, in the absence of any details concerning the need for and scope of the requested additional discovery, it is impossible to determine whether the new expert to which plaintiffs refer has actually developed a different theory concerning liability and the likely extent of damages, unrelated to McElyea's ejection from the vehicle, or whether plaintiffs' are seeking simply to delay consideration of the motion for summary judgment.

Plaintiffs' present position in opposition to the motion for summary judgment can be interpreted as putting the Court and defendant on notice that their new expert's investigation and opinion will certainly provide new, and heretofore unsuspected, evidence creating material issues of fact in dispute. Plaintiffs have never before suggested that McElyea was not ejected from the vehicle on impact or that he might have been seriously injured had he remained in the vehicle. Now, however, in response to defendant's motion for summary judgment, plaintiffs, for the first time, assert that additional discovery might alter this position. In other words, it appears that plaintiffs were purposely vague with respect to the scope of their motion to reopen discovery in order to support a delayed response to defendant's motion for summary judgment.

Thus, this response by plaintiffs confirms our impression that permission to reopen discovery would most certainly delay final resolution of this case, perhaps indefinitely. If the request to reopen discovery can be put to this purpose now, it can be used to prolong discovery again if that suits some future purpose of the plaintiffs. We reiterate our decision not to permit such a course, notwithstanding plaintiffs' request for the opportunity to support a substantive response to defendant's motion for summary judgment by creating issues of fact in dispute. For purposes of the summary judgment motion, plaintiffs will be bound by the facts of record developed through the long discovery period which was available to them but which is now closed.

## C. Sufficiency of Defendant's Evidence in Support of Summary Judgment

■ Plaintiffs raised one additional procedural matter in opposition to the motion for summary judgment, attacking the sufficiency of the evidence defendant cites to support one of the facts essential to its position, i.e., that McElyea would not have been ejected from the vehicle in the accident had he been wearing a seatbelt. Support for this proposition is found in the opinion of one of defendant's expert witnesses, John D. States, M.D.

Defendant initially made the opinion of its expert witness a part of the summary judgment record by attaching, as an exhibit to the motion for summary judgment, its answer to plaintiffs' expert interrogatories with respect to Dr. States, along with his *curriculum vitae*. At oral argument on the motion, plaintiffs contended that the answer to expert interrogatories is not evidence which may properly be considered to establish material facts in support of a motion for summary judgment. This position was reiterated in plaintiffs' written

---

filed subsequent to defendant's motion for summary judgment, which depends in large part on the ejection theory, it is possible to read into plaintiffs' motion the possibility that they might abandon their ejection theory entirely.

This Court's prior understanding of the scope of plaintiffs' requested additional discovery was based upon the representations of plaintiffs'

counsel at the January 17, 1991 conference. Moreover, nothing said in the February 12, 1991 argument on the motion indicated that the undisclosed new theory of liability related to anything other than the nature of the defect which permitted McElyea to be ejected from the vehicle.

response to defendant's motion. The only legal authority cited by plaintiffs in support of this position relates to the insufficiency of unsworn statements to support the entry of summary judgment. Plaintiffs did not attempt to reconcile this authority with Fed.R.Civ.P. 56(c), which permits answers to interrogatories to be considered in support of and in opposition to a motion for summary judgment.

Subsequently, defendant submitted an amended motion for summary judgment, (Doc. #50), to which they attached the affidavit of Dr. States setting forth his expert opinion that McElyea would not have been ejected from the vehicle had he been wearing his seatbelt. In the affidavit, Dr. States also adopts the interrogatory answer initially used to support the summary judgment motion as a fair summary of his professional opinions concerning the mechanism of McElyea's injuries. Plaintiffs, in turn, submitted a supplemental response to the motion for summary judgment, (Doc. #54), arguing that the affidavit is insufficient to support summary judgment under Rule 56(c) in that it is based upon an opinion rather than upon personal knowledge of the affiant.

The issue underlying plaintiffs' position on this matter is whether it is possible to consider the substance of a summary judgment motion in any case if essential evidence in support thereof can be found only in the opinion of an expert. Plaintiffs cite *Shearing v. Iolab Corp.*, 712 F.Supp. 1446 (D.Nev.1989) for the proposition that, in order to be considered sufficient under Rule 56, affidavits in support of a motion for summary judgment must be made on personal knowledge regardless of whether the testimony contained therein is that of an expert and would be admissable at trial. Relying only upon its own interpretation of the affidavit requirements set forth in Rule 56(e), the *Shearing* court refused to consider portions of expert testimony, presented by way of deposition and affidavit, which were challenged by plaintiff as not based upon personal knowledge. The court noted, however, that even if it had considered the challenged testimony it would have been obliged to conclude that there were issues of material fact in dispute which precluded summary judgment.

In reaching its conclusion regarding the sufficiency of evidence for summary judgment purposes, the *Shearing* court did not take into account an earlier, and contrary, opinion of the Court of Appeals for the Ninth Circuit. In *Cabrales v. County of Los Angeles*, 864 F.2d 1454 (9th Cir.1988),[10] the court concluded that Rule 56(e) may be read in conjunction with Fed.R.Evid. 703 in deciding a motion for summary judgment with the aid of expert affidavits. The court reasoned that, since Rule 703 permits expert testimony to be based upon facts or data made known to an expert which need not be admissable if of the type reasonably relied upon by experts in the field, expert witnesses are likewise permitted to base affidavits, for purposes of summary judgment, upon the same sources rather than upon personal knowledge.

This conclusion comports with an analysis of the issue which we find more persuasive than the cursory discussion in *Shearing*. In discussing the form of affidavits permissible for summary judgment purposes, Professors Moore and Wicker note that certain facts are not capable of direct proof but can only be inferred from other facts. 6 J. Moore and J. Wicker, MOORE'S FEDERAL PRACTICE ¶ 56.-22[1], n. 26 (2d Ed.1988). If Rule 56(e) rigidly permits only affidavits made upon personal knowledge, then all facts incapable of direct proof are automatically excluded from consideration for purposes of summary judgment. Expert opinion, of course, falls into this category and such a conclusion would blindly control a summary judgment decision in any case which

---

10. *Cabrales* was vacated by the Supreme Court and remanded for further consideration in light of *Canton v. City of Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). On remand, the same panel of the Court of Appeals reaffirmed the earlier decision in all respects, and specifically upheld its earlier affirmance of the district court's disposition of the summary judgment motion, which involved the question whether expert affidavits could create a disputed issue of material fact. *Cabrales v. County of Los Angeles*, 886 F.2d 235 (9th Cir.1989).

depends upon expert opinion to establish or refute material facts. In *Cabrales*, that course would have mandated the granting of the motion for summary judgment. In this case, it would foreclose substantive consideration thereof. Thus, we agree with Moore's and Wicker's conclusion that Rule 56(e) should not be interpreted to mean that an affidavit containing expert opinion testimony may never be considered in ruling on a motion for summary judgment. *Id.*

Further support for our inclination to reject the rigid application of Rule 56(e) which plaintiffs urge is found in *United States v. Johns–Manville Corporation*, 259 F.Supp. 440 (E.D.Pa.1966). There the court concluded that competent expert opinion testimony presented by affidavit could be considered in ruling on a motion for summary judgment. The court established the competency of the expert testimony in question by reviewing the credentials and experience of the expert witness and concluded that these were sufficient to accept his affidavit testimony insofar as it expressed his expert opinions.

Combining the approaches taken in *Cabrales* and *Johns–Manville*, we have examined the credentials and experience of defendant's expert witness, and have considered the information available to him and upon which his expert opinion is based. We conclude that he is both competent to render an opinion as to whether McElyea would have remained in the vehicle if he had been wearing a seatbelt and had a sufficient factual basis upon which to reach his conclusion in this case. Thus, we will consider the substance of defendant's affidavit and will not deny the motion on the technical grounds that an essential fact in support thereof is established by an affidavit based upon the opinion of the expert witness affiant.

## III SUBSTANCE OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The factual bases for defendant Navistar's motion are, (1) that McElyea was ejected from the vehicle which he was driving upon impact with a tree stump after the vehicle left the road, (Report of Nicholas Perrone, Exh. 13 to Plaintiffs' Pretrial Memorandum, Doc. # 29); (2) that McElyea was not wearing a seatbelt at the time of the accident although the vehicle was equipped with seatbelts, which were intact after the accident, (Deposition testimony of Jerry McElyea at 31, Exh. E to Defendant's Motion for Summary Judgment, Doc. # 45; Deposition testimony of William McElyea at 95, Exh. D to Doc. # 45); (3) that McElyea was seriously injured in the accident as a result of being ejected from the vehicle, (Exh. 13 to Doc. # 29); (4) that McElyea would not have been seriously injured had he remained in the vehicle, (*Id.*); (5) that, had McElyea been wearing his seatbelt, he would not have been ejected from the vehicle, (Affidavit of John D. States, M.D., attached to Amended Motion for Summary Judgment, Doc. # 50).

There are two legal theories upon which Navistar relies to establish that it is entitled to summary judgment as a matter of law in light of the foregoing facts. First, defendant argues that evidence of a relationship between non-use of a seatbelt and a plaintiff's injuries may be offered to reduce or eliminate recoverable damages in a crashworthiness case. Second, defendant contends that the seatbelts in the vehicle were part of the crashworthiness design of the vehicle, and, hence, that McElyea's injuries were caused by his own failure to use the very feature designed to make the vehicle safe for its intended use and not by any design defect in the vehicle.

These legal theories, in turn, are based primarily upon *Kolbeck v. General Motors Corp.*, 745 F.Supp. 288 (E.D.Pa.1990). In ruling on a motion in limine, the court in *Kolbeck* carefully analyzed Pennsylvania law concerning non-use of a seatbelt in a crashworthiness case under § 402a of the RESTATEMENT, SECOND of TORTS, in light of the Occupant Protection Act, 75 Pa.Cons.Stat.Ann. §§ 4581–4585. The court concluded that, prior to the effective date of the Occupant Protection Act, the Pennsylvania Supreme Court would have recognized a "seatbelt defense", *i.e.*, would

have permitted introduction of evidence concerning non-use of a seatbelt in both the liability and damage phases of a crashworthiness case. Moreover, the court determined that, under Pennsylvania law, the Occupant Protection Act should not be retroactively applied. Consequently, the court further concluded that the seatbelt defense is still permissible when the accident involved occurred prior to November 23, 1987, the effective date of the Occupant Protection Act.

Since the accident here involved occurred in October, 1986, defendant urges us to adopt and apply the reasoning of *Kolbeck* to this case. Based upon a thorough and careful analysis of the opinion in *Kolbeck*, as well as upon our review of the sources of state law underpinning *Kolbeck*, we agree that the decision there is applicable to this case.

We note, however, that the decision in *Kolbeck* spoke to the introduction of evidence at trial regarding non-use of a seatbelt. Thus, our decision to apply *Kolbeck* does not, in itself, dictate the outcome of the summary judgment motion. Rather, we must now consider whether the defendant is entitled to judgment based upon the facts relevant to the seatbelt defense permitted in *Kolbeck*.

Plaintiffs have not challenged defendant's arguments that *Kolbeck* was correctly decided and is applicable to this case. Rather, plaintiffs' substantive opposition to the motion is based upon their contention that the relevant facts and the application of *Kolbeck* to those facts do not support summary judgment in this case. Plaintiffs' principal contention in this regard is that it would be improper to enter judgment against them simply because McElyea was not wearing his seatbelt at the time of the accident. This argument misses the mark, however. The fact that McElyea was admittedly not wearing his seatbelt is only one of the five relevant facts, set forth earlier, upon which Navistar's motion for summary judgment is based. As also noted previously, four of these five relevant facts are based upon admissions by plaintiffs. In addition to McElyea's deposition testimony that he was not wearing his seatbelt at the time of the accident, plaintiffs heretofore took the position that McElyea was ejected from the vehicle upon its impact with the tree stump, was seriously injured as a result of being ejected, and would not have sustained his paralyzing injury had he remained in the vehicle.[11] Indeed, prior to their written response to Navistar's motion for summary judgment, these facts were not only admitted by plaintiffs but were essential to their theories of both liability and damages. Hence, in light of our decision not to permit additional discovery in this case, plaintiffs cannot now effectively deny these facts, rendering them undisputed for purposes of summary judgment.

The remaining fact essential to the viability of the seatbelt defense is established by the opinion of defendant Navistar's expert witness, John D. States, M.D., to the effect that plaintiff would not have been ejected from the vehicle had he been wearing his seatbelt. Plaintiffs did not substantively challenge this opinion, the basis for it, or the expert's qualifications to render such an opinion.[12] Plaintiffs argue, however,

---

**11.** As fully discussed, *supra*, plaintiffs, in their written response to defendant's motion, have attempted to create issues of fact with respect to whether McElyea was ejected from the vehicle and with respect to the extent of his injuries had he not been ejected. They do not deny, however, that the facts upon which defendant relies in support of its motion for summary judgment are on the record. Although plaintiffs assert that, at present, they have made no "representation to the effect that [McElyea] was ejected from the vehicle upon impact with the pole", this fact is part of their expert witness's report, as is the statement that he would not have been seriously injured had he not been ejected.

Plaintiffs' basis for asserting that these could be issues of fact in dispute was the assumption that their motion to reopen discovery would be granted and that a new expert might have reached different conclusions with respect to these issues.

As noted previously, we have decided to deny the motion to reopen discovery. Plaintiffs are, therefore, bound by the facts and the opinion of their expert presently on the record.

**12.** We have already discussed in detail the propriety of considering expert affidavit testimony in support of a motion for summary judgment. We here add our observation that, to oppose the

that the opinion of Dr. States on this matter leaves an issue of material fact in dispute when the opinion of plaintiffs' expert is likewise considered. Plaintiffs contend that their expert, Perrone, did not state that wearing a seatbelt would have prevented McElyea's ejection from the vehicle. Plaintiffs further contend that Perrone's willingness to render an opinion as to the crashworthiness of the vehicle, despite his knowledge that McElyea was not wearing his seatbelt at the time of the accident, creates a jury question with respect to whether such failure constitutes a foreseeable misuse of the product.

Plaintiffs' argument relating to the creation of disputed issues of fact for trial based upon the opinion of Dr. States and the silence of the record with respect to contrary opinions from their expert misconstrues their burden in responding to defendant's motion for summary judgment.

 In order to obtain a summary judgment, the proponent of the motion has the initial burden of identifying evidence, from the sources enumerated in Fed. R.Civ.P. 56(c), which demonstrates the absence of a genuine issue of material fact in dispute and which establishes the movant's entitlement to judgment as a matter of law. When confronted with a properly supported motion for summary judgment, the opposing party is required to produce, from the same sources enumerated in Rule 56, some contrary evidence which could support a favorable verdict. Thus, to defeat summary judgment, the opponent of the motion is required to identify issues of fact in dispute which are both genuine and material, *i.e.*, facts which are essential to establishing the claim and facts upon which a reasonable jury could base a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 Moreover, to successfully resist summary judgment, the party opposing the motion may not rest upon mere denials of the facts identified by the movant as supportive of its position, nor upon the vague and amorphous argument that the record somewhere contains facts sufficient to support its claims. *Childers v. Joseph*, 842 F.2d 689 (3d Cir.1988). Instead, the party opposing the motion for summary judgment is required to identify, specifically, the evidence of record which supports the claim and upon which a verdict in its favor may be based. *Id.* It follows, therefore, that the party opposing summary judgment cannot rest upon the argument that, although it has no contradictory evidence, its evidence does not corroborate that of the movant. Moreover, it is certainly insufficient to oppose a motion for summary judgment on the basis of disputed issues of fact by taking the position that, if given the opportunity, the non-movant would abandon its prior positions and the evidence supportive thereof in order to find or develop evidence contrary to previously undisputed facts of record identified and relied upon by the movant in support of its motion for summary judgment.

Thus, it is clear that plaintiffs have not met the standards for opposing summary judgment by identifying material issues of fact in dispute. They cited no evidence of record which challenges the evidence proferred by Navistar, and, thus, creates an issue for the jury. Instead, plaintiffs argue that if they are permitted to conduct additional discovery they might have a basis for repudiating facts which they previously admitted, and, indeed, upon which they have relied until now. In addition, with respect to the one fact supporting defendant's motion which plaintiffs did not admit, *i.e.*, that McElyea would have remained in the vehicle had he been wearing his seatbelt, plaintiffs did nothing more than identify arguments which could be made to persuade a jury to reject Navistar's expert's conclusion, despite the lack of evidence in the record contrary to his opinion, and despite any challenge to the expertise of the witness or to the basis for his opinion. Plaintiffs' arguments, there-

---

evidence so presented in support of the motion, the party opposing summary judgment might succeed by appropriately attacking the qualifica-

tions of the expert and the bases for his opinions, as well as by presenting contrary expert or factual testimony.

fore, do not effectively support the contention that there is a factual dispute with respect to whether McElyea would have been ejected from the vehicle had he been wearing his seatbelt. Consequently, all of the facts upon which Navistar relies in support of its motion have been established, either by plaintiffs' admission or by their failure to identify evidence of record which contradicts defendant's evidence in support of the motion for summary judgment.

The remaining issue to be determined is whether Navistar is entitled to judgment as a matter of law given the undisputed, material facts upon which its motion is based. Obviously, it will avail the proponent of summary judgment nothing if the undisputed facts, considered in light of the legal standards applicable to the claim, do not support a judgment in its favor.

As noted, one basis for Navistar's argument that it is entitled to summary judgment as a matter of law is the applicability of the *Kolbeck* case to the admission by plaintiffs that McElyea's injuries would have been slight had he remained in the vehicle.

Navistar argues that if, under *Kolbeck*, it is permitted to introduce evidence relating to the extent of McElyea's injuries had he been wearing his seatbelt, and if the undisputed evidence establishes, as it does, that McElyea's injuries would have been slight had he been wearing his seatbelt, then Navistar is entitled to judgment based upon plaintiffs' inability to prove enhanced damages as a result of any design defect in the vehicle which Navistar manufactured and sold.

The essential elements of the claim in a crashworthiness case, which plaintiffs are required to prove, are, "(1) ... an alternative, safer design, practicable under the circumstances; (2) the resulting injuries if the safer design had been used; and, as a corollary to the second element, (3) the extent of the enhanced injuries attributable to the defective design." *Roe v. Deere and Co., Inc.*, 855 F.2d 151, 153 (3d Cir.1988) (Citation omitted). Here plaintiffs have alleged that a design defect in the vehicle which Navistar manufactured permitted McElyea to be ejected from the vehicle. They further asserted, in order to meet the second element of a crashworthiness claim, that McElyea's injuries would have been slight had a safer design prevented his ejection from the vehicle. Finally, plaintiffs have consistently maintained that the severe injury, resulting in paralysis, which McElyea sustained is attributable entirely to the allegedly defective design which permitted his ejection from the vehicle. Plaintiffs have never asserted that the slight injuries which McElyea may have sustained in the accident would have been attributable to any other design defect in the vehicle.

 In arguing that application of the seatbelt defense supports summary judgment in light of the facts of this case and plaintiffs' claim, defendant Navistar is relying upon the doctrine of "avoidable consequences", as well as upon the elements of a strict liability crashworthiness case. Application of the avoidable consequences doctrine denies recovery to a plaintiff for that portion of the loss which could have been avoided by his own reasonable efforts. *Federal Insurance Company v. Sabine Towing & Transportation Co., Inc.*, 783 F.2d 347 (2nd Cir.1986). It is the defendant's burden to show that plaintiffs unreasonably failed to minimize their damages. *Id.*

The facts of record in this case, specifically, McElyea's failure to wear his seatbelt, as well as the undisputed evidence that he would not have been ejected from the vehicle had he been wearing it, viewed in conjunction with the elements which plaintiffs are required to establish in order to support a crashworthiness case and the claim of enhanced injury made by plaintiffs here, clearly demonstrate that plaintiffs would not have sustained any damages had McElyea been wearing his seatbelt at the time of the accident. Because plaintiffs cannot recover from defendant for damages which reasonably could have been avoided, *Seber v. Daniels Transfer Co.*, 618 F.Supp. 1311 (W.D.Pa.1985), we conclude, therefore, that McElyea's failure to

take the reasonable precaution of wearing his seatbelt,[13] and thus, to eliminate his injuries, precludes plaintiffs from seeking recovery from Navistar in this case. Hence, defendant Navistar is entitled to judgment as a matter of law based upon the unchallenged proof that the enhanced injuries which plaintiffs claim resulted from the allegedly defective design of the vehicle were entirely avoidable.

Navistar characterizes its second legal argument in support of summary judgment as going to the causation element of plaintiffs' claims. Navistar appears to argue that if, under *Kolbeck*, it is permitted to introduce evidence of McElyea's non-use of a seatbelt in the liability phase of the case, the evidence that McElyea would have remained in the vehicle had he been wearing his seatbelt establishes that his failure to wear the seatbelt, rather than any defect in the vehicle, was the proximate cause of his injuries. Thus, Navistar argues that it is entitled to summary judgment as a matter of law based upon plaintiffs' inability to establish the causation element of their claims.

■ Since we have already determined that Navistar is entitled to judgment based upon our conclusion that plaintiffs' claim of enhanced injuries cannot withstand Navistar's evidence that such injuries were avoidable by a means both reasonable and entirely available to McElyea, it is not strictly necessary to address defendant's causation argument. We do so, however, for the sake of completeness and to illustrate the principle that the law applicable to the case, as well as the undisputed facts of record, must support defendant's request for judgment in its favor. Here, we conclude that the law relating to proximate cause would not support judgment in Navistar's favor. Although we could agree, based upon the facts of record relating to how and why McElyea's paralysis occurred, that McElyea's failure to wear his seatbelt was a substantial factor in bringing about the plaintiffs' injuries, *i.e.*, was a proximate cause thereof, there are additional consid-

erations which must be taken into account in determining the effect of McElyea's conduct upon the entire proximate cause inquiry. Such considerations include the number of other factors which may have contributed to bringing about the plaintiffs' harm and the extent to which such factors may have had an effect on producing it. *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 523 A.2d 379 (1987). More simply stated, there can be more than one proximate cause of an injury.

■ Moreover, where the intervening conduct of the plaintiff, or a third person, is claimed to be a proximate cause of plaintiff's harm, such conduct must be a superseding cause of the injury in order to relieve a manufacturer of liability in a strict liability case. *Id.* Whether such conduct is a superseding cause is, in turn, based upon the reasonable foreseeability of the conduct, which is ordinarily a jury question. *Id.*

■ In connection with the instant motion, Navistar has cited no evidence upon which we could conclude that there was only one proximate cause of plaintiffs' injuries, *i.e.*, McElyea's failure to wear his seatbelt. On the contrary, plaintiffs have alleged that a defect in the vehicle existed and was a substantial factor in bringing about plaintiffs' harm. There is evidence of record in the form of expert reports to support these allegations, albeit evidence disputed by defendant, which likewise can support its position by expert opinion. This, however, creates the quintessential jury question, unresolvable on a motion for summary judgment. Moreover, issues and evidence relating to whether there was a defect in the vehicle and whether such defect was a substantial factor in bringing about plaintiffs' harm were not part of defendant's present motion for summary judgment. Thus, we have no basis upon which to make such determinations even if it were appropriate to do so.

In addition, if defendant is implicitly contending that McElyea's failure to wear his

---

**13.** Implicit in this conclusion is the underlying conclusion that, as a matter of law, the wearing of a seatbelt was a reasonable precaution under the circumstances.

seatbelt, coupled with the evidence that he would have suffered no enhancement of his injuries as a result of a defect in the vehicle had he been restrained when the accident occurred, establishes that McElyea's conduct superseded any contribution which a defect in the vehicle may have made to his injuries, there remains a jury question with respect to whether McElyea's conduct was reasonably foreseeable to Navistar. Defendant has cited no evidence of record relating to this inquiry, much less argued that it is possible for the Court, rather than a jury, to make such a determination.

## IV SUMMARY

Our decision not to permit additional discovery in this case, as well as our resolution of the procedural issues raised by plaintiffs in opposition to defendant's motion for summary judgment opened to consideration the substantive bases for defendant's motion.

Based upon our legal conclusion that the case of *Kolbeck v. General Motors* correctly states the law of Pennsylvania with respect to the viability and applicability of the "seatbelt defense" to cases such as this one, based upon our conclusion that undisputed facts of record establish that defendant has demonstrated that such defense is applicable to this case, and based upon our conclusion that plaintiffs are barred from recovery of damages under the doctrine of avoidable consequences because McElyea was not wearing his seatbelt at the time of the accident and would have been uninjured had he been wearing it, we will grant defendant's motion for summary judgment.