**Stacey L. DEAN, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION; and Ronald Eugene Bell.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1998.
Decided Sept. 18, 1998.

---

Daniel S. Weinstock, Philadelphia, for appellant.

Gerhard Schwaibold, Harrisburg, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

PELLEGRINI, Judge.

Stacey L. Dean (Dean) appeals from an order of the Court of Common Pleas of Huntingdon County (trial court) granting the motion for summary judgment filed by the Commonwealth of Pennsylvania, Department of Transportation and Eugene Bell (collectively, PennDot) and determining that it was not liable for the injuries sustained by Dean.

The facts of this case are not in dispute. On January 26, 1991, Dean was a passenger in a vehicle operated by Bell. The vehicle was proceeding east on U.S. Route 22 when it fishtailed on the snow-covered highway, causing Bell to lose control of the vehicle. As a result, the vehicle went beyond the graveled highway shoulder and continued on over a steep, declining embankment where it overturned sideways. Dean sustained serious injuries resulting in quadriplegia.

Dean filed suit against PennDot alleging, among other things,[1] that PennDot was neg-

---

1. Dean also alleged that PennDot was negligent by:

(a) Failing to properly design, construct and maintain a safe highway;

ligent by failing to properly shield the steep embankment with a guardrail on the portion of highway at which the accident occurred. PennDot filed a motion for summary judgment that the trial court denied relying on our Supreme Court's decision in *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), holding that it was for a jury to determine if the absence of a guardrail constituted negligence. More than two years later, PennDot filed a second motion for summary judgment in light of our decision in *Rothermel v. Commonwealth of Pennsylvania, Department of Transportation*, 672 A.2d 837 (Pa.Cmwlth.1996), holding that even if PennDot was negligent by failing to place a guardrail on a highway, that failure did not support a theory of liability against PennDot under the sovereign immunity statute.[2] PennDot argued that summary judgment was appropriate because it was not liable for Dean's injuries as it was the snow on the roadway that caused the vehicle to leave the roadway, and the absence of a guardrail merely "facilitated" her injuries by permitting the vehicle to proceed down the embankment. The trial court granted the second motion for summary judgment relying on our holding in *Rothermel*. Dean then petitioned this Court for permission to appeal the trial court's order granting summary judgment that we granted and is now before this Court.[3]

For a plaintiff to recover damages in an action against the Commonwealth, it must prove the following:

1. The action is against a "commonwealth party" or "local agency" which includes an employee thereof;

> (b) Failing to properly comply with accepted industry and/or government standards relating to safe highway design, construction, maintenance, repair and guarding;
> . . .
> (d) Failing to replace previously extant guardrails along the aforementioned portion of roadway that had previously been removed;
> (e) Failing to flatten the slope of the severe embankment along the section of roadway at which the aforementioned accident occurred;
> (f) Failing to comply with its own rules and regulations as well as federal rules and regulations pertaining to highway design and maintenance.

2. The action arises out of a negligent act or omission of an agency or an employee of any agency acting within the scope of his or her employment;

3. The damages arise out of the negligent act or failure to act;

4. The damages would be recoverable at common law or under a statute creating a cause of action, e.g., wrongful death; and

5. The negligent act or omission falls within one of the exceptions to sovereign immunity set forth at 42 Pa.C.S. § 8522.

42 Pa.C.S. § 8522.

The elements of negligence that must be proven are a duty or obligation recognized by law requiring the actor to conform to a certain standard of conduct; a failure of the actor to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the interests of another. *Mason & Dixon Lines, supra.*

Dean contends that she met these conditions because PennDot created a dangerous condition of the highway by failing to erect a guardrail, a duty it had at common law, and that this failure caused the car in which she was a passenger to go over the embankment. She further argues that because she suffered damages as a result of PennDot's failure to erect a guardrail, PennDot is liable under 42 Pa.C.S. § 8522(b)(4). Immunity for liability as a result of the Commonwealth's negligence is waived for a dangerous condition pursuant to 42 Pa.C.S. § 8522(b)(4) when damages are caused by:

> A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property,

**2.** *See* 42 Pa.C.S. § 8522.

**3.** Summary judgment is appropriate when there is no genuine issue of material fact and the movant clearly establishes its entitlement to judgment as a matter of law. *Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa.Cmwlth. 1, 645 A.2d 1370 (1994). When considering a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts and all inferences to be drawn therefrom. *Id.*

lease-holds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) (relating to potholes and other dangerous conditions).

A dangerous condition of Commonwealth real estate has been defined as "a state of affairs that hampers or impedes or requires correction." *Wyke v. Ward*, 81 Pa.Cmwlth. 392, 474 A.2d 375, 379 (1984).

Regarding PennDot's duty to erect guardrails on the highway, Dean needed to establish PennDot's negligence. At common law, there was a duty by a government party to keep highways safe for travel to reduce dangers posed by steep cliffs and embankments that were close to the highway by erecting guardrails or other barriers. *Balla v. Sladek*, 381 Pa. 85, 112 A.2d 156 (1955); *see also*

*McCracken v. Curwensville Borough*, 309 Pa. 98, 163 A. 217 (1932) (common law duty existed to travelling public to place adequate guardrails on road to prevent skidding cars from going off side of the road).[4]  Additionally, in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), our Supreme Court held that the duty of care that a Commonwealth agency owed to those using its real estate was such that it was required to make the condition of its property safe for the activities for which it was regularly used, intended to be used or reasonably foreseen to be used.[5]  *See also Yoders v. Township of Amwell*, 172 Pa. 447, 33 A. 1017 (1896);[6] *Felli v. Commonwealth, Department of Transportation*, 666 A.2d 775 (Pa.Cmwlth.1995).

PennDot does not dispute that it had a duty to maintain the highway in a reasonably safe manner by erecting guardrails on the highway,[7] but because, like in *Rothermel*, the

**4.** In *Glover v. Commonwealth, Department of Transportation*, 167 Pa.Cmwlth. 87, 647 A.2d 630 (1992), *petition for allowance of appeal denied*, 540 Pa. 606, 655 A.2d 994 (1995), we held that a motorist had the corresponding duty to use the highways in the ordinary and usual manner with reasonable care.

**5.** Rather than attacking the majority's reasoning, Judge Doyle maintains in his dissent that somehow we are reversing *Snyder* when we are not even tangentially affecting its holding. *Snyder* is factually much different than this case because it involved individuals who did not use the road for the purpose for which it was intended. There, several individuals got out of their car that was parked on the berm and while on foot, in an attempt to avoid being hit by another car backing up on the berm, scrambled up the embankment on the side of the road. The embankment, however, was actually the top of a highwall of a strip mine used to prevent cars from driving into the pit and dropping 80 feet to the bottom of the mine. Because it was the middle of the night and dark, the individuals did not see the strip mine and fell into it with one individual being killed and the other three seriously injured. Our Supreme Court held that PennDot was not liable for the injuries because the strip mine was some distance from PennDot's right-of-way, and the absence of lighting so as to create a deceptive appearance on the shoulder of the road was not a defect of the land or an artificial condition under 42 Pa.C.S. § 8522(b)(4). As can be seen, our holding in this case in no way impacts upon our Supreme Court's decision in *Snyder*.

The most troubling aspect of his dissent, though, is his suggesting that we should not

disturb "an important en banc decision of the court" because it will create uncertainty in this area of law. This position, however, ignores that ever since we decided *Rothermel*, there has been nothing *but* uncertainty in this area, both at the trial court level and in this Court as to both its scope and correctness which this *en banc* decision attempts to correct. Finally, any suggestion that we should not correct an erroneous decision of ours asks us to shirk our duty.

**6.** In *Yoders*, our Supreme Court discussed at length the issue of whether the absence of any guardrails on a narrow bridge was the proximate or remote cause of plaintiff's injuries when she alighted from her carriage after crossing the bridge to retrieve her hat and her horse and carriage backed onto and over the bridge causing injuries to her. In the jury trial preceding the appeal, the trial court instructed the jury that the negligence of the township was not the proximate cause of plaintiff's injuries, and the jury found for the defendant. On appeal, the Court determined that because the township was bound to foresee and reasonably provide against a common danger to 1) ordinary travel on that highway that was used in a normal manner; 2) the ordinary mode of travel was by horses, buggies and wagons that traveled over the narrow bridge regularly; and 3) horses were often frightened or startled for no reason, the township ought to have foreseen that the absence of guardrails on the bridge would likely result in injury.

**7.** *See also Fidanza v. Commonwealth, Department of Transportation*, 655 A.2d 1076 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 677, 668 A.2d 1138 (1995).

snow on the highway was the cause of Dean's injuries and the absence of the guardrail merely facilitated her injuries, it is not liable. In *Rothermel,* an accident was set in motion by a cause not considered a dangerous condition within the highway exception. Specifically, the driver of a vehicle lost control of her car when it slid on a patch of ice, veered off the road and went over an embankment because there was no guardrail. The driver of the car and her passenger died as a result of their injuries. Although PennDot had a duty to place adequate guardrails on the road to prevent cars from skidding off the side of the road, and that such an injury would be compensable if it fell within the real estate exception to sovereign immunity, we held that *even if* a jury could find the absence of a guardrail was a dangerous condition, it would have to be proven that the condition was the proximate and *only* cause of the injury. Finding that ice on the road was the proximate cause of the *accident* because it set the accident in motion and the absence of a guardrail merely facilitated the injuries and produced more severe consequences than if the guardrail had been present, we concluded that plaintiff had not proven her case.

■ PennDot now asks us to rely on *Rothermel* and find that the absence of guardrails in this case as well was not the proximate cause of Dean's injuries. While recognizing that *Rothermel* would foreclose recovery, Dean asks us to reconsider our holding in *Rothermel* and hold that the absence of the guardrail was one of the causes of her injuries utilizing the language set forth in 42 Pa.C.S. § 8522.[8] The issue then that we must determine is whether the absence of a guardrail can be a dangerous condition within the real estate exception when it causes or adds to injuries sustained as a result of another cause that is not a dangerous condition

within any exception to immunity, but is the cause that sets the accident in motion.

In resolving that issue in *Rothermel,* at the core of our decision was the holding that "for purposes of deciding the applicability of the real estate exception to sovereign immunity, it is the *cause* of the *accident*—the event that set the accident in motion—that is determinative." 672 A.2d 837, 842, n. 8. Upon reflection, however, we believe that even if a condition exists that sets the accident in motion that is not considered a dangerous condition of, in this case, the highway, that does not mean that a second dangerous condition of the highway that caused a plaintiff's injuries is not actionable.

First, the sovereign immunity statute itself waives immunity based upon *damages* caused by a dangerous condition and is not based on the cause of the *accident.* 42 Pa.C.S. § 8522 does not use the word "accident" but only refers to "damages" and "injury" stating in relevant part:

> The General Assembly . . . does hereby waive . . . sovereign immunity as a bar to an action against Commonwealth parties, for *damages* arising out of a negligent act where the *damages* would be recoverable under the common law or a statute creating a cause of action if the *injury* were caused by a person not having available the defense of sovereign immunity. (Emphasis added.)

■ In this case, if the absence of a guardrail is found to be a dangerous condition, because the statute itself only refers to damages and injuries and makes no mention of an "accident" causing the injuries, PennDot would be liable under the real estate exception to sovereign immunity for Dean's injuries, despite the fact that it may not be liable for the snow on the highway, the cause that set the accident in motion.[9]

---

**8.** Dean also argues that we should rely on our Supreme Court's holdings in *Powell v. Drumheller,* 539 Pa. 484, 653 A.2d 619 (1995) and *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992), because, in those cases, the Court found that PennDot and the City of Philadelphia, respectively, were liable for injuries sustained when another car drove into their lane of traffic and hit the victims head on. However, those cases have no application here because they considered whether the Commonwealth was liable

for negligent acts of third parties. *See* 42 Pa. C.S. § 8541.

**9.** While a "proximate cause" of an injury requires the cause to be a condition foreseeable by the Commonwealth agency and a probable consequence of its negligence, a condition that merely "facilitates" an injury is one that makes the occurrence of the accident easier but is not the cause of the injury, i.e., not the natural and probable consequence of the original negligence,

■ Second, this interpretation of the sovereign immunity statute is consistent with "normal" negligence law that provides there can be two or more proximate causes of injuries in a negligence action because a negligent act may be a proximate cause of damages even though other causes may have contributed to the result. *See McElyea v. Navistar International Transportation Corporation,* 788 F.Supp. 1366, *aff'd,* 950 F.2d 723 (C.A.3(Pa.)1991); *Mazur v. Merck & Company, Inc.,* 742 F.Supp. 239 (E.D.Pa. 1990); *Wieder v. Towmotor Corporation,* 568 F.Supp. 1058 (E.D.Pa.1983); *Commonwealth, to Use of Willow Highlands v. U.S. Fidelity & Guaranty Company,* 364 Pa. 543, 73 A.2d 422 (1950); *Shippen Township v. Portage Township,* 133 Pa.Cmwlth. 142, 575 A.2d 157, *petition for allowance of appeal denied,* 526 Pa. 643, 584 A.2d 324 (1990). Because the focus is on damages and not on the initial or subsequent cause, to escape liability where there are two or more substantial causes of damages, the defendant must show that the plaintiff's injuries would have been the same even without its negligence. *DeVita v. Durst,* 167 Pa.Cmwlth. 105, 647 A.2d 636 (1994), *petition for allowance of appeal denied,* 540 Pa. 606, 655 A.2d 993 (1995). Ultimately, though, the question of whether a condition is a proximate cause of injuries is a question of fact for a fact finder to determine. *Jones v. Port Authority of Allegheny County,* 136 Pa.Cmwlth. 445, 583 A.2d 512 (1990).

Even though PennDot is correct in arguing that the snow on the roadway was not a dangerous condition for which immunity has been waived,[10] nonetheless, liability is not prohibited under 42 Pa.C.S. § 8522 if a second proximate cause was responsible for Dean's injuries. Because there can be more than one proximate cause of injuries, we expressly overrule our decision in *Rothermel,* and accordingly, vacate the trial court's order granting summary judgment and remand the case for further proceedings consistent with this opinion.

### ORDER

AND NOW, this 18th day of September, 1998, the order of the Court of Common Pleas of Huntingdon County dated January 26, 1998, granting the motion for summary judgment filed by the Commonwealth of Pennsylvania, Department of Transportation and Eugene Bell, is vacated and the case remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction is relinquished.

LEADBETTER, Judge, concurring.

I fully agree with the majority's analysis concerning proximate cause, and our overruling of *Rothermel.* I write separately for the purpose of noting that I do not read the majority opinion to hold that PennDOT has a duty to erect guardrails wherever the highway does not abut a stretch of flat, barren ground, nor even that such an allegation always creates a jury question as to whether the highway is safe for its intended purpose,[1] only that the issue has been waived by Penn-

---

because there is not a reasonably close nexus to the injuries and the resulting injuries are not inevitable. *See Redland Soccer Club, Inc. v. Department of Army of United States,* 55 F.3d 827 (3rd Cir.), *cert. denied,* 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 725; *Dudley v. USX Corporation,* 414 Pa.Super. 160, 606 A.2d 916 (1992), *petition for allowance of appeal denied,* 532 Pa. 663, 616 A.2d 985 (1992). In other words, while the condition may have made it possible, because there are so many other attendant causes of conduct, that particular event cannot be considered a substantial factor in bringing about the injuries. For example, in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), our Supreme Court held that injuries inflicted on a family by a juvenile who entered their home after escaping from the detention center where he was being held by climbing through a break in the fencing did not fall within the real estate exception to sovereign immunity because the negligence in allowing the break in the fence did not produce as a natural and probable consequence the actions of the juvenile so as not to have been the cause of injuries.

10. *See Huber v. Commonwealth, Department of Transportation,* 122 Pa.Cmwlth. 82, 551 A.2d 1130 (1988), *petition for allowance of appeal denied,* 525 Pa. 637, 578 A.2d 931 (1989).

1. The legal duty owed by PennDOT is that the highway be in "a reasonably safe condition for travel by persons using the road in the ordinary...and usual manner and with reasonable care." *Felli v. Commonwealth, Dept. of Transportation,* 666 A.2d 775, 777 (Pa.Cmwlth.1995).

DOT in this case. Indeed, I would dissent from any such holding unless and until clear and generally accepted scientific evidence is presented on the efficacy of guardrails under modern highway conditions. What little caselaw there is on the subject was developed in the horse and buggy days, and thus is less than helpful today. For instance, it is not at all clear to me that a barrier sufficient to prevent a tractor-trailer from driving off the road at sixty miles per hour would not do more harm than good in many accidents, and neither judges nor juries should be allowed to speculate about such matters. In addition, we are not dealing with a strict liability standard;[2] PennDOT has a duty only to act with *reasonable prudence*, not to make the highways as safe as they can possibly be no matter what the cost or other practical considerations. At such time as this court is presented with a record which contains appropriate scientific evidence, we will be able to determine whether a duty exists (at least under certain circumstances) as a matter of law or whether each plaintiff must present expert testimony of the necessity for guardrails on a case-by-case basis. Here, in response to PennDOT's motion for summary judgment, plaintiff came forward with no such evidence.[3] Consequently, had PennDOT properly preserved the issue, I would have affirmed the grant of summary judgment.

KELLEY, J., joins in this concurring opinion.

DOYLE, Judge, dissenting.

I respectfully dissent.

While I believe this Court has the authority to overrule one of its own prior decisions, namely, *Rothermel v. Commonwealth of Pennsylvania, Department of Transportation,* 672 A.2d 837 (Pa.Cmwlth.1996),[1] I do not believe we have the authority to overrule case precedent written by the Supreme Court, notably *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), which, in my view, controls the outcome in this case.

Nowhere in either this Court's opinion in *Snyder v. Harmon*[2] or in the opinion of the Supreme Court reversing that decision was there any argument advanced that the plaintiffs were not using the road for the purposes for which it was intended to be used. The plaintiffs in *Snyder v. Harmon* had specifically pled and argued that the Pennsylvania Department of Transportation (DOT) was negligent by its failure to erect a guardrail along L.R. 33060 where it bordered a strip mine which was adjacent to that state highway. This Court held that "the absence of the guardrail alongside the roadway [which was] on land owned or under the jurisdiction of DOT [was] a dangerous condition on Commonwealth property, as the lack of the guardrail increases the danger of falling off an 80–foot precipice into the strip mine." 519 A.2d at 531 (emphasis deleted). The Supreme Court *reversed* that decision, articulating the law as follows:

> The appellees next assert that the close proximity between L.R. 33060 and the deep chasm, and the unlit and deceptive appearance of the shoulder of the road presented an inherently dangerous condition. Thus, liability is not predicated on a defective condition on Commonwealth land,

**2.** Sovereign immunity has been waived only for negligence. *See* 42 Pa.C.S. § 8522(a).

**3.** Our Supreme Court has recently held that:

> [W]here the non-moving party fails to adduce sufficient evidence to establish the existence of an element essential to his case and on which he bears the burden of proof, then the moving party is entitled to judgment as a matter of law.

*Ertel v. Patriot–News Co.,* 544 Pa. 93, 101, 674 A.2d 1038, 1042 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996) [*adopting Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)].

**1.** Although I recognize that this Court *may* overrule a prior decision of this Court, I am of the view that this Court should not do so in this instance under these circumstances. *Rothermel* was an important en banc decision of this Court in a developing area of the law, decided on March 6, 1996, less than two years ago. By today adopting the view of the dissent in *Rothermel* and making that view paramount, a great uncertainty is created in the law for litigants and the practicing bar, and it also disrupts the orderly development of the law by the Supreme Court where such development ultimately rests.

**2.** 102 Pa.Cmwlth. 519, 519 A.2d 528 (1986).

but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property which the Commonwealth knows or should reasonably know **and takes no action to prevent any harm from occurring.** While this theory appears attractive, **it is not supported by any exception to our immunity statute.**

It is uncontroverted that the strip mine highwall, at the points where the appellees fell, was some distance from the edge of PennDOT's right-of-way. Furthermore, the absence of lighting so as to create a deceptive appearance of the shoulder of the road cannot be said to be either an artificial condition or a defect of the land itself. **Accordingly, we conclude the Section 8522(b)(4) is inapplicable to this cause of action. The issue of duty thus becomes moot.**

*Id.* at 435, 562 A.2d at 312–13 (emphasis added).

The majority today contradicts that holding. The majority states:

> Dean contends that she met these conditions [causation] because PennDOT created a dangerous condition of the highway by failing to erect a guardrail, a duty it had at common law, and that this failure **caused** the car in which she was a passenger to go over the embankment. She further argues that because she suffered damages as a result of PennDOT's failure to erect a guardrail, PennDOT is liable under 42 Pa.C.S. § 8522(b)(4)....

(Op. at 376.) (Emphasis added.)

The majority opinion then further states that:

> Dean asks us to reconsider our holding in *Rothermel* and hold that the absence of the guardrail **was one of the causes** of her injuries utilizing the language set forth in 42 Pa.C.S. § 8522[ (b)(4) ].

(Op. at 378.) (Emphasis added.)

However strongly the majority might wish to backtrack and reverse the outcome in *Rothermel,* when the Supreme Court has clearly stated in an identical situation that the issue of duty, and hence causation, is moot because the exception of Section 8522(b)(4) **is inapplicable,** we are nevertheless bound by that determination.