647 A.2d 636

**Donna M. DeVITA, Guardian Ad Litem
for Faith LaRussa, Appellant,**

v.

**Terry Donald DURST, Three Coast Carriers, Inc., Commonwealth of Pennsylvania/Department of Transportation, Clifton Dale Pennington, David G. Reed, American Asphalt Paving Co., and S.W.S. Construction Co.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1994.

Decided Aug. 24, 1994.

Petition for Allowance of Appeal Denied March 10, 1995.

108

---

Nicholas S. Mattise, for appellant.

Arthur W. Hankin, for appellee Terry Donald Durst.

Paul A. Barrett, for appellee S.W.S. Constr. Co.

Before CRAIG, President Judge, NEWMAN, J., and DELLA PORTA, Senior Judge.

CRAIG, President Judge.

Faith LaRussa appeals from an order of the Court of Common Pleas of Lackawanna County which denied her post-trial motions after a jury rendered a verdict in her favor against Terry Donald Durst, Three Coast Carriers Inc., Commonwealth of Pennsylvania, Department of Transportation, Clifton Dale Pennington, Dale G. Reed, American Asphalt Paving Co. and S.W.S. Construction Co. (defendants) for personal injuries.

On April 25, 1988, LaRussa was a passenger in an automobile traveling on I–81 North. LaRussa's vehicle was following a tractor-trailer driven by Pennington. A truck, driven by Durst, followed a car traveling behind the LaRussa vehicle. The vehicles proceeded through a construction zone. Although intending to continue north on I–81, the vehicles passed to the right of a concrete barrier onto a single lane exit ramp.

Pennington stopped his tractor-trailer on the exit ramp. The Durst truck struck the vehicle in front of it, pushing it off to the side, and then hit the rear of the LaRussa vehicle pushing it into the rear of Pennington's tractor-trailer. LaRussa incurred injuries and was taken to Geisinger Medical Center, where she remained until April 30, 1988.

In January, 1990, LaRussa commenced an action seeking compensation for injuries arising from the motor vehicle accident. Before the start of the trial, which commenced on June 2, 1992, the defendants admitted liability to LaRussa, leaving the amount of damages as the only issue before the jury.

At the trial, LaRussa's expert witnesses testified that, as a result of the accident, she suffered soft tissue orthopedic injuries, carpal tunnel syndrome, post-traumatic stress syndrome, anxiety, depression and a closed-head injury. The most significant of these was an organic brain disorder rendering her permanently disabled. Because of the physical and

psychological injuries, LaRussa argued that she has been permanently disabled since the accident. Evidence of antici- pated wage loss and the cost of full-time care was presented on LaRussa's behalf. LaRussa was not present at the trial.

The defendants maintained that LaRussa suffered no brain damage as a result of the accident but that she had, for the majority of her life, suffered from severe emotional problems. The defendants argued that the pre-existing mental condition was the cause of LaRussa's current disability, not the accident of April 25, 1988.

On June 12, 1992, a jury rendered a verdict in favor of LaRussa, awarding her total damages in the amount of $125,-000, which was molded by the court to $120,000 for income loss coverage under the Motor Vehicle Financial Responsibili- ty Law.

LaRussa filed post-trial motions on June 22, 1992, which the court denied on July 1, 1993. This appeal followed.

On appeal to this court, LaRussa contends that a new trial should be granted based on the inadequacy and inconsistency of the verdict. Additionally, LaRussa challenges a number of the trial court's evidentiary rulings.

## Inadequacy or Inconsistency of Verdict

As previously stated, the jury awarded damages totaling $125,000. On the special verdict slip, the jury awarded dam- ages as follows:

QUESTION 1:

State the amount of damages sustained by the Plaintiff, Faith LaRussa, as a result of the injuries caused by the April 25, 1988 accident:

| | | |
|---|---|---|
| (a) | For future medical expenses | $ 10,000 |
| (b) | For past and present loss of wages | $ 32,000 |
| (c) | For future impairment of her earning capacity | $ 5,500 |
| (d) | For past and present physical pain and suffering | $ 5,000 |
| (e) | For future pain and suffering | $ 0 |
| (f) | For past and present emotional distress and mental anguish | $ 40,000 |
| (g) | For future emotional distress and mental anguish | $ 25,000 |

| | | | |
|---|---|---|---|
| (h) | For past and present loss of the pleasures and enjoyments of life | | $ 5,000 |
| (i) | For future loss of the pleasures and enjoyments of life | | $ 0 |
| (j) | For scarring and disfigurement | | $ 2,500 |

TOTAL DAMAGES FOR PLAINTIFF FAITH LARUSSA $125,000

 Where the trial court has refused to grant relief for an inadequate verdict, the appellate court will not grant a new trial without a clear abuse of discretion. *Burkett v. George,* 118 Pa.Commonwealth Ct. 543, 545 A.2d 985 (1988). In order to support the granting of a new trial based on the inadequacy of the verdict, "the injustice of the verdict should stand forth like a beacon." *Elza v. Chovan,* 396 Pa. 112, 118, 152 A.2d 238, 240 (1959).

LaRussa claims that based on the evidence presented concerning her disabilities, the verdict is low and a new trial should be granted.

 One principle relating to review of a small damage award is that compromise verdicts are expected and allowed. *Id.,* at 115, 152 A.2d at 240. LaRussa contends that, because the appellees admitted liability, a compromise verdict is not permissible in this case. However, a compromise verdict may arise out of damages or negligence or the balance of evidence concerning either or both. *Id.* at 115, 152 A.2d at 240. In this case, the defendants contested the existence and degree of damages claimed by LaRussa as a result of the car accident.

As previously stated, evidence was presented that LaRussa suffered soft tissue injuries, scarring, carpal tunnel syndrome, post-traumatic stress syndrome, severe anxiety, depression and a closed head injury. Dr. McAndrew, a psychologist, testified that, because of organic brain disorder, depression and anxiety resulting from the car accident, LaRussa was permanently disabled and required future care. A life care planner testified that alternative future care would cost between $28,000 and $63,000 per year.

The defendants contested the existence of a closed head injury and whether any psychological injury exhibited by

LaRussa resulted from the accident. Specifically, Dr. Burke testified that, according to the medical records, LaRussa did not suffer organic brain disfunction related to the car accident. Additionally, the defendants contested LaRussa's depression and anxiety by producing evidence of a pre-existing mental condition. As to LaRussa's physical condition, Dr. Sternleib testified that his examination found that LaRussa displayed voluntary muscle contraction as opposed to involuntary muscle spasms around her neck and back. Dr. Kerhli, LaRussa's family doctor prior to the accident, testified that LaRussa exhibited signs of carpal tunnel syndrome before the accident.

Unlike *Hill v. Bureau of Corrections,* 124 Pa.Commonwealth Ct. 172, 555 A.2d 1362 (1989), cited by LaRussa, where the court held that a compromise verdict was not permissible because the defendant did not dispute liability or damages, the defendants in this case contested the existence and degree of damages claimed by LaRussa. As such, a compromise verdict is permissible.

Most recently, the Supreme Court addressed the issue of inconsistent and inadequate verdicts in *Catalano v. Bujak,* 537 Pa. 155, 642 A.2d 448 (1994). That case is relevant to LaRussa's claim that, because the jury failed to award her damages for future pain and suffering and for future loss of the pleasures and enjoyments of life, the verdict is inconsistent.

In *Catalano,* the jury awarded the plaintiff all of his medical expenses, but failed to award him money for lost wages. This court held that it was inconsistent to award the plaintiff all of his medical expenses without awarding him lost wages for those days missed due to his medical problems.

On appeal, the Supreme Court vacated this court's order which had remanded the case for a new trial because of an inconsistent verdict. The Supreme Court stated that "[i]t would appear that the jury simply disbelieved evidence of damages in excess of what it awarded. It is not for any reviewing court to dictate what evidence a jury must believe." *Id.* at 537 Pa. 162, 642 A.2d at 451. In this case, the jury

apparently did not believe that LaRussa would suffer future pain and suffering or future loss of the pleasures and enjoyments of life. As such, the verdict is not inconsistent.

### Evidence of Previous Emotional Problems

LaRussa contends that the trial court erred in permitting the defendants to present testimony and evidence concerning anxiety, depression, emotional overlay and headaches suffered by LaRussa before the accident.

The exclusion or admission of evidence at trial is within the discretion of the trial court and a new trial should be granted only when there is a clear abuse of discretion by the judge. *Lewis v. Mellor,* 259 Pa. Superior Ct. 509, 393 A.2d 941 (1978). However, evidence of previous medical complaints must be connected to the complaints at issue. If not, the trial judge should exclude the evidence as irrelevant and prejudicial. *Papa v. Pittsburgh Penn–Center Corp.,* 421 Pa. 228, 218 A.2d 783 (1966).

A party may recover damages where two or more substantial causes combine to cause an event, even if no one cause standing alone would have brought about the injury. To escape liability, the defense must show that the plaintiff's condition would have been the same today even without the defendant's negligence. *Boushell v. J.H. Beers, Inc.,* 215 Pa.Superior Ct. 439, 258 A.2d 682 (1969).

In this case, LaRussa claimed that her psychological injuries resulted from the automobile accident. The defendants in this case presented medical testimony that LaRussa had suffered emotional problems throughout her life and that her disability after the accident occurred independently of, and was unrelated to, any injuries suffered in the accident.

Specifically, the defendants presented evidence that, when examined by Dr. Malloy in 1976, LaRussa was hysterical, emotional and difficult. Dr. Rogalla noted flight of ideas and anxiety. Dr. Rosenblatt observed functional overlay, rambling and anxiety. Additionally, as of the date of the accident,

LaRussa was taking Xanax, an anti-anxiety drug prescribed by her doctor for her Sheehan's syndrome. Finally, LaRussa did not seek medical treatment until one year following her accident.

On cross-examination, LaRussa's physicians testified that the above information, which was not provided to them before their diagnosis, would have been used by them in diagnosing and treating LaRussa.

Because the evidence presented by the defense bore a direct connection to the allegations made by LaRussa concerning her emotional disability from the accident, and because the evidence was contrary to sworn statements made by LaRussa that she did not have any pre-existing emotional problems or head trauma, the trial court properly admitted the evidence.

### Medical Records

LaRussa contends that the trial court erred in permitting the defense to use the medical records of Drs. Malloy, Rosenblatt and Friedman, which were created in the 1970's, during the cross-examination of LaRussa's witnesses. Those doctors were not called at trial.

Medical witnesses may give opinions based on reports of other medical personnel not in evidence, if a report would normally be relied upon by the witness in practice. The witness may not, however, use the opinion of other medical personnel to bolster his or her own testimony. *Cooper v. Burns*, 376 Pa.Superior Ct. 276, 545 A.2d 935 (1988), *petition for allowance of appeal denied*, 522 Pa. 619, 563 A.2d 888 (1989).

In this case, the defendants used the reports to cross-examine LaRussa's experts concerning discrepancies between details contained in the reports and the experts' observation of LaRussa. We agree with the trial court that the defendants properly used the factual contents of the records to cross-examine LaRussa's experts.

*Impeachment of Witnesses on Collateral Matters*

Initially, LaRussa questions the testimony of Daniel O'Dea, LaRussa's homebound teaching instructor in 1951 and 1952. LaRussa also disputes the relevancy of a 1952 medical report contained in her school files. Additionally, the defendants read portions of LaRussa's depositions taken in 1979 and 1991 to show discrepancies in the extent of her injuries. Finally, LaRussa contends that the defendants should not have been permitted to inform the jury of a lawsuit involving a 1976 injury.

The O'Dea testimony, the school report, and the previous lawsuit, all related to the issue of brain damage alleged by LaRussa. O'Dea testified that LaRussa was not in good health and prone to lying about her illness. LaRussa informed her treating doctors that she had a normal childhood without illness, graduated from high school and from nursing school. However, LaRussa did not graduate from nursing school, nor from high school.

■ The school report prepared by Dr. Sirgany in 1952 recommended that LaRussa quit school due to her mental attitude. An exception to the hearsay rule admitting business records exists when three requirements are met: (1) The record is made contemporaneously with the event it records; (2) at the time the record is made it is impossible to anticipate any reason why someone would falsify the record in the future; and (3) the person making the statement contained in that record is known. *Isaacson v. Mobil Propane Corp.*, 315 Pa.Superior Ct. 42, 461 A.2d 625 (1983). There was no dispute that Dr. Sirgany, now deceased, created the report in April, 1952 during the same month that LaRussa quit school.

LaRussa contends that the trial court improperly permitted the defense to read portions of her answers to interrogatories and her April 1991 deposition in this case in conjunction with portions of a 1979 deposition provided by her stemming from a fall incurred in 1976. The defendants sought to impeach LaRussa's credibility, when giving depositions, regarding inju-

ries which she claimed resulted solely from the automobile accident.

Testimony at prior trials, in depositions, and interrogatories are proper sources for cross-examination and impeachment. However, a discrepancy must exist which is material to the present issue. *Bruno v. Brown*, 414 Pa. 361, 200 A.2d 405 (1964). In her interrogatory answers pertaining to this case, she stated that, in her 1976 accident, she suffered only minor leg injuries. However, in the 1979 deposition, describing her 1976 fall, LaRussa stated that she fell so hard that she was knocked unconscious. Additionally, in her suit, LaRussa claimed she suffered anxiety and depression from that fall. Because the defense contended that LaRussa's mental disability predated the automobile accident, the impeachment of LaRussa regarding previous head injuries and conflicting testimony was properly permitted by the trial court.

### Medical Coverage

After her accident, LaRussa did not resume medical treatment until one year after her accident. LaRussa contends that the trial court erred in prohibiting her from introducing evidence as to the lack of medical coverage to explain the one-year gap in treatment.

Courts have found evidence of insurance permissible where it is relevant to the issue in a case. *Beechwoods Flying Service v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 476 A.2d 350 (1984). In that case, evidence of insurance was admitted for the narrow purpose of proving the existence of a contract. In this case, insurance coverage is not a central issue. Although LaRussa contends that she did not obtain medical treatment during the year following the accident because she lacked medical coverage, LaRussa did not have medical coverage when she resumed medical treatments in the spring of 1989.

### Appointment of Guardian Ad Litem

LaRussa contends that the trial court erred in prohibiting her from informing the jury that a guardian ad litem was

appointed to represent her interests in this litigation. We agree with the trial court's determination that this information was not relevant to LaRussa's claim for damages.

### LaRussa's Inability to Testify at Trial

LaRussa contends that the trial court erred in prohibiting her from introducing medical testimony explaining her absence from the trial. Specifically, Dr. Golden and Dr. Harris were of the opinion that the stress of testifying at trial might cause mental harm to LaRussa. Comments on a party's absence from trial or failure to testify is permissible in a civil case. *Craig v. Borough of Ebensburg,* 185 Pa Superior Ct. 581, 137 A.2d 886 (1958). In this case, LaRussa's attorney was permitted to argue her inability to testify to the jury, as such no error occurred.

### Preclusion of LaRussa from Appearing at Trial

Initially, a motion in limine was presented to preclude LaRussa from being called as a witness for the defense. Before the start of the trial, the court ruled that LaRussa would not be called as on cross if she did not appear at trial. The trial judge determined that, because LaRussa exhibited bizarre behavior during voir dire, to permit her in the courtroom without allowing the defense to call her as on cross would have prejudiced the defendants. We agree that the trial court acted within its discretion.

### Exhibits

At the conclusion of the trial, LaRussa's attorneys requested that photographs of the accident scene and of LaRussa after the accident be sent out with the jury in its deliberations. The trial court ruled that, if the jury requested to see them, they would go out with the jury. Determinations of which exhibits may be sent out with the jury is within the discretion of the trial court. *Kearns v. Clark,* 343 Pa.Superior Ct. 30, 493 A.2d 1358 (1985).

## Conclusion

In this case, LaRussa is not entitled to a new trial based on the inadequacy or inconsistency of the verdict. Additionally, although the defendants admitted liability, the defense contested every element of damages, most significantly, the brain injury. Finally, we find no evidentiary errors committed by the trial judge warranting a new trial.

Accordingly, the decision of the trial court is affirmed.

## ORDER

NOW, August 24, 1994, the order of the Court of Common Pleas of Lackawanna County, at No. 1296 Civil 1991, dated July 1, 1993, is affirmed.