## Lewis v. Letito

*A. Richard Patete Jr.,* for plaintiff.
*Paul G. Kirk,* for defendant.

HILL, *J.,* December 15, 1995—

## I. PROCEDURAL HISTORY

This personal injury case was tried before a jury on June 12, 1995. Defendant's liability was stipulated prior to trial. A verdict was entered in favor of plaintiff in the amount of $500. Plaintiff contends that the amount of the verdict was inadequate and has filed the following post-trial motion. Plaintiff's motion for post-trial relief sets forth the following contentions of error:

(1) Inadequacy of the amount of the verdict;

(2) The jury disregarded the court's instructions regarding compensating the plaintiff for all of her injuries;

(3) The jury verdict was compromised;

(4) Plaintiff was entitled to wage loss damages because the testimony regarding plaintiff's wage loss went uncontradicted by defendant;

(5) Plaintiff's prior medical treatment was irrelevant and inadmissible;

(6) Defendant's expert, Dr. Stephen Horowitz, was permitted to rely on the medical opinions of Dr. Randall Culp in offering his expert opinion.

## II. FACTS

On a motion for new trial, the evidence must be viewed in the light most favorable to the non-moving party. *Russell v. Monongahela Railway Co.,* 159 F. Supp. 650, 655 (W.D. Pa.), *affirmed,* 262 F.2d 349 (3d Cir. 1958). The evidence taken in the light most favorable to defendant, the non-moving party, is as follows.

On January 8, 1993, at approximately 6 p.m., plaintiff, Esther Lewis, who was driving her 1987 Toyota Camry was rear-ended by an automobile driven by defendant Bartley Letito on Grays Ferry Avenue, Philadelphia. Plaintiff's vehicle was stopped behind a Septa bus, in the right-hand lane. At the time it was raining.

Plaintiff testified that she was thrown forward and struck the dashboard with her hands. She was wearing her seat belt at the time of impact. As a result plaintiff testified she began to experience pain in both hands and in her right arm from the wrist to her shoulder. Plaintiff also admitted to suffering a prior medical condition of her right hand which had required medical treatment for aches and pains. After this accident plaintiff resumed treatment for her right hand. Plaintiff testified the pain she experienced after the accident was different than any pain she had experienced prior thereto.

Plaintiff did not seek medical attention until Sunday, January 10, 1993 two days after the accident, however she was denied treatment apparently because she lacked medical coverage. The next day January 11, 1993 plaintiff went to her family doctor, Harry Frankel, M.D. for treatment of injuries alleged to have been sustained

in the accident. Dr. Frankel suggested plaintiff take ibuprofen and released her. Plaintiff testified that her pain persisted and she returned to Dr. Frankel, at which time he recommended X-rays. These X-rays were thereafter taken of plaintiff's right arm and hand two weeks after the accident.

Plaintiff saw Dr. Frankel four times over a four month period, however, he never recommended physical therapy. Plaintiff alleged right hand pain persisted while all other pains in the other parts of her body had ceased. Dr. Frankel referred plaintiff to Dr. Randall Culp, of the Hand Center, in Philadelphia.

Plaintiff's first visit with Dr. Culp was in April of 1993. Dr. Culp recommended an EMG and also over-the-counter medication. The EMG report dated May 24, 1993 showed that plaintiff was suffering from slight right ulnar nerve cubital tunnel neuropathy, and that it was likely that the left median nerve had been affected, because there was neuropathy at both *wrists*. (Ex. D-1, p. 25.)[1]

Plaintiff saw Dr. Culp five times over eight months. Dr. Culp never recommended physical therapy although he concluded that plaintiff suffered from the early stages of carpal and cubital tunnel syndromes. (Ex. P-7, p. 10.)[2] Plaintiff stopped treating with Dr. Culp in December 1993 because her right hand pain persisted.

Plaintiff testified that she then returned to Dr. Frankel who recommended her to Dr. Bong Lee, an orthopedic surgeon. After examining plaintiff in the first office visit, Dr. Lee recommended medication and physical

---

1. The transcript of the videotaped deposition of Stephen M. Horowitz, M.D. defendant's expert is referred to as "Ex. D-1."

2. The transcript of the videotaped deposition of plaintiff's expert Bong S. Lee M.D. is referred to as "Ex. P-7."

therapy for plaintiff's right hand. This was performed at Graduate Hospital. Plaintiff received a specially made custom brace/support while treating at Graduate.

Plaintiff's physical therapy lasted from January to March of 1994 and totaled 13 sessions. Physical therapy had started approximately one year after the accident and was completed March 18, 1994.

At the trial, plaintiff presented the videotaped deposition of Bong S. Lee, M.D. as her expert witness. Dr. Lee is board certified by the American Board of Orthopedic Surgery and qualified to practice in the areas of orthopedic and hand surgery. Dr. Lee examined plaintiff a total of three times.

Dr. Lee first examined plaintiff on January 10, 1994 at which time her chief complaints concerned her right hand. Dr. Lee diagnosed plaintiff as suffering from carpal and cubital tunnel syndromes, both of which were caused by a disturbance of the two nerves coming down to the right hand, indicating the median nerve and the ulnar nerve.

At the trial Dr. Lee testified within a reasonable degree of medical certainty that plaintiff's condition was related to the January 8, 1993 accident, because prior to that time plaintiff never experienced nerve problems or carpal tunnel and cubital tunnel syndromes. Dr. Lee admitted that he did not review plaintiff's X-rays, nor her EMG reports, stating that this was not standard medical practice. However, he admittedly relied on Dr. Culp's medical report and findings in formulating his expert opinion. Moreover, based upon his experience as an intern at the Hand Center back in 1971 it was Dr. Lee's experience that studies performed at the Hand Center were both accurate and reliable.

By plaintiff's last visit with Dr. Lee there was considerable improvement and it appeared that the prescribed hand therapy was working. There was marked

increase in plaintiff's range of motion, decreased discomfort, increased strength and no neurological deficit was noticed in the right hand. Further, Dr. Lee testified that no muscle atrophy was evident in plaintiff's right arm. Also, Dr. Lee testified that he would go so far as to state that plaintiff had completely recovered because he considered total recovery to be without symptoms and without discomfort. Subjectively, plaintiff claimed she had minimum discomfort but objectively plaintiff did not suffer any neurological deficit which would indicate carpal and/or cubital tunnel syndromes.

Defendant called Stephen Horowitz, M.D. as his expert. Dr. Horowitz first examined plaintiff three days before the trial on June 6, 1995. Although the actual in-office examination took less than one half hour, Dr. Horowitz was able to make a diagnosis based upon a review of plaintiff's medical history, review of x-rays of plaintiff's right hand dated January 27, 1993, review of the EMG dated May 24, 1993, review of the reports of Dr. Culp and Dr. Lee and a physical examination.

In her office visit with Dr. Horowitz plaintiff complained chiefly of diffused achiness in her right hand and a burning sensation in her right elbow. Plaintiff did not complain about numbness or tingling in either area, a fact which Dr. Horowitz believed was necessary to establish causation. Dr. Horowitz testified that the presence of numbness or tingling was significant in establishing causation because carpal tunnel syndrome is typically accompanied by neurological complaints. Dr. Horowitz stated that the fact plaintiff was not complaining would imply that her condition was at best mild.

The physical examination performed by Dr. Horowitz showed that plaintiff had full range of motion of her right elbow and right wrist and that the sensory and

motor activities of her right upper extremies were within normal limits. Thus, there were no objective findings to demonstrate that plaintiff suffered from carpal or cubital tunnel syndrome. A physical examination by Dr. Horowitz indicated that plaintiff had full sensation in all her fingers, normal strengths, no evidence of muscle atrophy, and normal neurological functions in her upper extremities.

Dr. Horowitz testified that he performed a two point discrimination procedure on plaintiff's right hand, which showed plaintiff's condition as normal. However, when Dr. Horowitz performed the Tinel's maneuver plaintiff showed positive Tinel's sign at the right wrist and complained of tingling in her right hand. Also, plaintiff complained of tingling in her right elbow.

Dr. Horowitz testified the reason for plaintiff's complaints during the Tinel's maneuver was reasonable, because the test is performed by tapping on the nerve. Dr. Horowitz testified that a positive reaction to the Tinel's test is not a clear indication of carpal or cubital tunnel syndromes.

Dr. Horowitz also performed the Phalen's test, which indicated some tingling in plaintiff's right fingers. Dr. Horowitz testified to the unlikeliness of such a positive reaction. Also, Dr. Horowitz performed the deQuervain test. The deQuervain test is used to indicate inflammation around the exterior tendons going down into the thumb. Dr. Horowitz testified the plaintiff's complaints were not classic for this procedure, therefore he was unable to conclude from this or the other tests performed whether or not the test results were positive.

Finally Dr. Horowitz testified that he found plaintiff to be suffering from mild to minimal carpal and cubital tunnel syndromes. However, plaintiff did not have complaints of numbness and tingling, which would have been a clear indication of carpal or cubital tunnel syn-

dromes. Furthermore, plaintiff's neurological evaluation was totally within normal limits, regardless of the positive Tinel's test and the positive EMG findings.

Additionally, Dr. Horowitz testified within a reasonable degree of medical certainty that plaintiff's current hand injury was not related to the accident of January 8, 1993. Dr. Horowitz' basic thesis was that a single traumatic event, such as striking one's hands on the dashboard of an automobile, is not generally considered causative of carpal or cubital tunnel syndromes. Rather a repetitive process is required to cause these syndromes.

Dr. Horowitz further testified that plaintiff's complaints were minimal and similar to those complaints elicited regarding her wrist and elbow, prior to the accident of January 8, 1993.

According to Dr. Horowitz, if carpal or cubital tunnel syndromes were present plaintiff would have had immediate numbness and tingling in her fingers at the time of the accident. This is because these symptoms are the result of the compression of the nerve which causes the pain. In this case there was no complaint of immediate numbness and tingling.

Dr. Horowitz concluded that plaintiff's complaints of achiness in her right hand and a burning sensation in her right elbow were minimal and not indicative of carpal or cubital tunnel syndromes.

### III. CONTENTIONS OF PLAINTIFF ON POST-TRIAL MOTION

A. *Inadequacy of the Amount of the Verdict*

Plaintiff has filed a large number of contentions most of which parrot the same conclusion that the verdict was insufficient.

It is well-known law that it is the province of the trier of fact to pass upon the credibility of the witnesses and the weight to be accorded to the evidence produced. Indeed it is within the discretion of the factfinder to believe all, part or none of the evidence. *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

Plaintiff's contentions ignore the fact that the damage portion of the case which is what plaintiff complains about revolves around the testimony of the two experts, Dr. Lee and Dr. Horowitz. The jury was free to accept the conclusions of Dr. Lee or the conclusions of Dr. Horowitz. Obviously, the jury believed Dr. Horowitz who explained that carpal and cubital tunnel syndromes are not generally caused by one traumatic event but are more likely due to repetitive motions. Moreover, Dr. Lee himself testified that the last time he had seen the plaintiff she was relatively free from any symptoms.

Accordingly, plaintiff has no reasonable basis for complaining that the verdict was insufficient. Also, plaintiff contends that the verdict was so low that it must have been the result of passion and/or prejudice. There is nothing in the record to indicate the jury's verdict was affected by passion and/or prejudice.

Plaintiff also contends that the verdict was so inadequate that it had to shock the senses of everyone in the courtroom. However, the court believes that it is reasonable to conclude that the jury based the amount of the award on the testimony of Dr. Horowitz. Accordingly the conscience of the court is not shocked by the size of the verdict.

B. *The Jury Disregarded the Court's Instructions Regarding Compensating the Plaintiff for All of Her Injuries*

It is plaintiff's contention that the jury disregarded the court's charge directing them that if they found

the defendant liable they must compensate the plaintiff for all of her injuries. In fact, the defendant's liability was stipulated to by both parties; this was made clear from the outset of the trial by the opening statements of counsel for the plaintiff.

Moreover, the court in its instructions told the jury that they must "fairly compensate the plaintiff for *all the damages which have been proven and were caused by the negligence of the defendant.*" (T. 3.72.) (emphasis added) It is the exclusive function of the factfinder to assess the credibility of witnesses and determine whether the damages were proven. *Commonwealth v. Bridell,* 252 Pa. Super. 602, 384 A.2d 942 (1978).

The issue to be decided by the jury in this matter was to determine whether the injuries claimed by plaintiff were caused by the defendant's actions. Obviously the jury found that this was not so.

### C. *The Jury Verdict Was Compromised*

Plaintiff contends that although defendant's liability was stipulated, the jury "then took it upon themselves to ignore plaintiff's pain, injuries, out of pocket and compensatory damages and instead, arbitrarily chose the sum of $500." Again it was within the jury's province to assess the damages. It is clear that the jury did not accept plaintiff's testimony concerning the extent of her injury or her theory of causation and reduced the damages accordingly. *DeVita v. Durst,* 167 Pa. Commw. 105, 647 A.2d 636 (1994); see also, *Catalano v. Bujak,* 537 Pa. 155, 642 A.2d 448 (1994).

### D. *Plaintiff Was Entitled To Wage Loss Damages Because the Testimony Regarding Plaintiff's Wage Loss Went Uncontradicted by Defendant*

Plaintiff contends that because the defendant failed to contradict plaintiff's testimony regarding wage loss

she is entitled to damages in the amount of the loss. The wage loss testimony presented was as follows:

"Q. And that first visit with Doctor Frankel, that was the only day that you missed from work?

"A. Yes." (T. 2.64.) Obviously the jury could have included the one day's loss of wages in the verdict.

### E. *Plaintiff's Prior Medical Treatment Was Irrelevant and Inadmissible*

At the trial counsel for plaintiff specifically questioned plaintiff on direct examination about the conditions of her hand and wrist prior to the accident. Plaintiff now contends that it was improper to permit defendant to thereafter cross-examine plaintiff for the purpose of exploring her prior hand and wrist complaints, the treatments she received and medical records relevant to her condition.

Plaintiff opened the door and the court did not abuse its discretion in permitting defendant to explore this issue. Such cross-examination was relevant even if the door had not been opened.

### F. *Plaintiff's Contention That the Court Erred in Denying Her the Right To Cross-Examine Defendant's Medical Expert, Stephen M. Horowitz M.D. Concerning the Opinion of a Non-Testifying Doctor on the Issue of Causation*

Paragraph three of plaintiff's motion for post-trial relief plaintiff states:

"the medical opinions of Dr. Randall Culp were not permitted to be introduced during the cross-examination of Dr. Stephen Horowitz, the defendant's expert, all in violation of *Primavera v. Celotex Corp.,* 415 Pa. Super. 41, 608 A.2d 515 (1992). Failure to allow this

precluded the jury from important and valuable information which would have assisted the jury in making their determination. *The only issue for the jury was causation.* To allow the jury to hear Dr. Culp's opinion on this issue would have assisted them. It was proper grounds for cross-examination." (emphasis added)

In fact the cross-examination which was precluded by the court did not deal with a causation issue but a diagnosis.

At the trial Dr. Horowitz, defendant's medical expert, testified on direct examination in his videotaped deposition that he had reviewed the medical records concerning plaintiff prior to the trial. Specifically, Dr. Horowitz testified as follows in Exhibit D-1, pp. 21-23:

"Q. And what records did you review?

"A. There were x-ray reports from January 27, 1993 which involved the right hand, right shoulder and lumbosacral spine, all of which were negative for fractures.

"Q. Let me interrupt you for just one second, Doctor. Do you rely on review of medical records at least in part in making a diagnosis?

"A. Yes."

Specifically, Dr. Horowitz testified on direct examination that his diagnosis was based on a thorough examination which consisted of taking plaintiff's medical history and reviewing her medical records, reviewing the x-rays of plaintiff's right hand dated 1/27/93, reviewing plaintiff's EMG dated 5/24/93 and reviewing the reports of Dr. Culp and Dr. Lee. Dr. Horowitz testified that following his own examination he reached a diagnosis that the plaintiff was "suffering from some very mild and minimal cubital and carpal tunnel syndrome." (Ex. D-1, p. 35.) However, Dr. Horowitz testified that his findings were not related to the motor

vehicle accident because the "process of a single traumatic event such as striking the hand on a dashboard of a car is in general not considered to be a cause for cubital or carpal tunnel syndrome." (Ex. D-1, pp. 36, 40-42.)[3]

This testimony was clearly admissible and in fact not objected to under the theory enunciated in *Primavera v. Celotex Corp.,* 415 Pa. Super. 41, 608 A.2d 515 (1992) which permits a medical expert to testify to pertinent parts of a non-testifying physician's report if such a report would normally be relied upon by an expert in formulating an opinion. *Id.* at 51, 608 A.2d at 520-21; *DeVita v. Durst, supra; Taliferro v. Johns-Manville Corp.,* 421 Pa. Super. 204, 617 A.2d 796 (1992); see generally, *Jones v. Constantino,* 429 Pa. Super. 73, 631 A.2d 1289 (1993).

In the case at bar the court on objection by defendant deleted from the videotaped deposition of Dr. Horowitz the following portion of his cross-examination as reflected in the transcript of that deposition (Ex. D-1, pp. 64-66):

"Q. Now, you reviewed Dr. Culp's records; correct?

"A. Yes.

"Q. And in his record of April 23, 1993 he says specifically that her injuries are related to the automobile accident? . . .

"Q. Doctor, do you have that report in front of you, April 23, 1993?

"A. Yes.

---

3. On cross-examination Dr. Horowitz testified that trauma was not a major reason for carpal or cubital tunnel syndrome. "It's just like degenerative arthritis." (Ex. D-1, pp. 53-55.)

"Q. And on the second page, the impression section, can you read that for us, please?

"A. It says impression, Number One, rule out right cubital tunnel syndrome. And Number Two, multiple contusions secondary to motor vehicle accident."

This deletion by the court, if error, was harmless as the following analysis will bear out.

On direct examination Dr. Horowitz cited Dr. Culp's, report of April 23, 1993 as one of the medical records he relied on in making a diagnosis. Specifically, Dr. Horowitz stated that in this report Dr. Culp stated that the plaintiff "did not recall the exact mechanism of injury, and may have struck her hands on the dashboard of her car," (Ex. D-1, p. 23) that also in this report Dr. Culp stated "she did have a positive Tinel's sign bilaterally near the carpal tunnel. The rest of the wrist and hand was normal" and that in this report Dr. Culp stated that "many of her complaints were ill defined and had not been particularly substantiated on examination." (Ex. D-1, p. 24.)

When asked if this was significant Dr. Horowitz stated:

"Well, yes. Usually the diagnosis of carpal tunnel syndrome and cubital tunnel syndrome is made with very specific objective findings on examination. And it's very—you know, the complaints of hand discomfort or elbow discomfort are very common in the population. But to really get a diagnosis of carpal tunnel syndrome, especially a diagnosis leading to treatment such as surgery, the person has to have certain findings that go along with their presentation.

"So it was significant if he felt that her complaints were ill defined. *He felt that she may have cubital*

*tunnel syndrome,* and he recommended an EMG." (Ex. D-1, pp. 24-25.) (emphasis added)

Since Dr. Horowitz had already testified on direct examination that Dr. Culp in his report "felt she may have cubital tunnel syndrome," it was not prejudicial to delete from cross-examination the "impression" previously referred to as coming from Dr. Culp's report, *supra* at 563 to wit: "Number One, rule out right cubital tunnel syndrome. And Number Two, multiple contusions secondary to motor vehicle accident." "Rule out" does not connote a final diagnosis of cubital tunnel syndrome. Rather it suggests only a possibility which is what Dr. Horowitz had previously testified on direct examination when based on the report he stated that Dr. Culp "felt she may have cubital tunnel syndrome."

Contrary to plaintiff's contention of error that she was denied cross-examination on the issue of causation neither reference to the Culp report on direct or cross-examination dealt with causation, but stated a diagnosis.

Moreover, the deleted cross-examination was misleading. As noted hereinafter plaintiff started on page 64 with the following:

"Q. Now, you received Dr. Culp's records, correct?

"A. Yes.

"Q. And in his record of April 23 he says specifically that her injuries are related to the automobile accident?"

At that point there was an objection and the court thereafter deleted several lines of testimony ending with Dr. Horowitz's reference to Dr. Culp's "impression": "Number One, rule out right cubital tunnel syndrome. And Number Two, multiple contusions secondary to motor vehicle accident." It would appear, that plaintiff was attempting to make it seem to the jury that the statement "Number One, rule out right cubital tunnel

syndrome" contained in Dr. Culp's "impression" was not independent but an integral part of "Number Two, multiple contusions secondary to motor vehicle accident." The implication being that the cubital tunnel syndrome was also secondary to the accident along with the multiple contusions. In fact the "impression" does not in any way suggest this.

Throughout this trial plaintiff stressed cubital and carpal tunnel syndromes and nothing else as the basis for her claim. As testified by plaintiff the other soft tissue injuries such as pains in her neck, back, shoulder, arms and legs had long resolved. Liability was admitted and defendant's own expert Dr. Horowitz had testified that plaintiff had minimal cubital and carpal tunnel syndromes. In his closing address plaintiff's counsel completely ignored the long resolved contusions but devoted his speech entirely to his contention that the accident caused the carpal and cubital tunnel syndromes. See also, plaintiff's opening statement to the jury where her counsel stated:

"The whole issue is causation. There's no dispute that Esther Lewis has the carpal tunnel and cubital tunnel syndromes. Both doctors agree she has it. The whole dispute is whether or not the accident is what caused that." (T. 2.23.)

The verdict indicated that the jury awarded $500 for the assorted soft tissue injuries, related pains and possibly one day's loss of pay which plaintiff had testified to. The jury did not believe that the minimal cubital and/or carpal tunnel syndromes Dr. Horowitz testified to were caused by the accident. Accordingly the jury did not make any award to plaintiff for these syndromes.

Since the disputed portion of the cross-examination having to do with Dr. Culp's impression did not imply

that the accident caused carpal or cubital tunnel syndromes it would not have helped plaintiff in establishing causation. It would have been a source of confusion and the court exercised reasonable discretion in sustaining defendant's objection.

## IV. CONCLUSION

A new trial is warranted only in clear cases. The following quotation from an excellent opinion by the Learned Trial Judge Murray C. Goldman in *Scott & Singleton v. DiValentino,* 30 Phila. 215 (1995), is apt:

"Plaintiffs first contend that the jury verdict of zero damages should be overturned, and a new trial should be granted on the issue of damages. It should first be noted that it is in the sound discretion of the trial court whether to grant a new trial based on an allegedly inadequate verdict. *Botek v. Mine Safety Appliance Corp.,* [531 Pa. 160, 165,] 611 A.2d 1174, 1176 (1992). Further, it is well settled law it is the jury's province to determine the amount of the damage award. *Hawley v. Donahoo,* [416 Pa. Super. 469, 471,] 611 A.2d 311, 312 (1992) See also, *Lewis v. Pruitt,* [337 Pa. Super. 419, 431,] 487 A.2d 16, 32 (1985) (juries' role to assess damages and the court should not interfere). Finally, a verdict may only be set aside as inadequate when it appears to have been a product of passion, prejudice, partiality or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdicts bears no reasonable relation to the loss suffered by plaintiff. *Kiser v. Schulte,* [538 Pa. 219, 225,] 648 A.2d 1, 4 (1994). In light of these guidelines there is no reason to overturn the verdict in this case."

Accordingly, plaintiff's post-trial motion is denied. Judgment is hereby entered on the verdict in favor of plaintiff and against defendant in the amount of $500.

## ORDER

And now December 15, 1995 following a trial before the court with jury and a review of plaintiff's post-trial motions and defendant's response, said post-trial motions are denied and judgment is entered on the verdict for $500.