**Bodnar v. Mesko**

---

*Jeffrey M. Kornblau* and *Justin L. Groen*, for plaintiffs.

*Ryan C. Blazure*, for defendant.

NEALON, *J.*, June 11, 2012—In anticipation of

their impending trial, the plaintiffs in this automobile accident case have filed a "motion in limine to preclude evidence of plaintiff Michael Bodnar's prior accidents as irrelevant and unduly prejudicial." Plaintiff Michael Bodnar ("Bodnar") seeks to bar any evidence of or reference to his 1997 slip and fall incident and 1998 automobile accident for which he received treatment at the Community Medical Center ("CMC"). (Plaintiffs' brief in support, p. 3). Bodnar claims damages in this action for injuries allegedly suffered to his neck and back on May 14, 2009, and argues that any evidence concerning the 1997 and 1998 injuries is inadmissible since the defense "cannot present evidence that either accident affected plaintiff Michael Bodnar's life in any fashion." Bodnar also asserts that any reference to such evidence "serves only to bias the jury into making it appear that plaintiff Michael Bodnar is litigious." (*Id.* pp. 4-5). The defense contends that Bodnar suffered injuries to his neck and low back in the 1997 and 1998 incidents and "that the jury should be shown the whole picture of [Bodnar's] claimed injuries, not the mere glimpse proffered by his counsel." (Defendants' brief in opposition, pp. 4-5).

The exclusion or admission of evidence is within the sound discretion of the trial court whose decision will not be disturbed absent an abuse of discretion or misapplication of law. *Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100 (Pa. Super. 2011). To be admissible, "evidence of previous medical complaints must be connected to the complaints at issue," and if it is not, the trial court "should exclude the evidence as irrelevant and prejudicial." *Odato v. Fullen*, 848 A.2d 964, 966 (Pa. Super. 2004) ("Since the previous medical complaints of left-shoulder pain

were connected to the medical complaint at issue, we find the evidence relevant, and we further find no abuse of discretion or error of law committed by the trial court in denying the [plaintiffs'] motion in limine."), app. denied, 580 Pa. 698, 860 A.2d 124 (2004); *DeVita v. Durst*, 167 Pa. Cmwlth. 105, 113-114, 647 A.2d 636, 640 (1994) (evidence of plaintiff's prior emotional problems and anti-anxiety drug prescription was admissible because it "bore a direct connection to the allegations made by [plaintiff] concerning her emotional disability from the accident."), app. denied, 540 Pa. 606, 655 A.2d 993 (1995). As the Court in *Papa v. Pittsburgh Penn-Center Corp.*, 421 Pa. 228, 218 A.2d 783 (1966) aptly observed, "[t]estimony concerning any prior fall [i]s not admissible for any purpose unless the injuries from that alleged accident could be connected to those claimed in the present suit, so as to raise the inference of a pre-existing condition." *Id.*, 421 Pa. at 228, 218 A.2d at 789. Accord, *Valentine v. Acme Markets, Inc.*, 455 Pa. Super. 256, 261-262, 687 A.2d 1157, 1160 (1997) (trial court erred by allowing evidence of plaintiff's two prior falls since "[t]here is also no testimony that [plaintiff] suffered injuries in his two prior falls that are similar to the injuries he suffered in this fall."). Compare, *Musselman v. Davison*, 41 D. & C. 4th 302, 308 (Bucks Co. 1999) (since plaintiff "suffered a concussion in the 1982 fall" and "had suffered from migraines" following car accidents in 1980 and 1986, "[t]hese prior falls and accidents would go to establishing that her migraines and memory loss were prior existing conditions" before her 1990 fall), aff'd, 757 A.2d 1004 (Pa. Super. 2000), app. denied, 568 Pa. 665, 795 A.2d 978 (2000).

The defense retained an orthopedic surgeon, Thomas J. Allardyce, M.D., to perform a medical examination of Bodnar pursuant to Pa.R.C.P. 4010. In his report dated June 20, 2011, Dr. Allardyce itemizes the records which he reviewed, including the police's accident report, selected pages of Bodnar's deposition, and Bodnar's medical records, which pre-date and post-date the subject accident on May 14, 2009. Included among those records are: (1) CMC emergency room records dated January 27, 1997 indicating that Bodnar "fell on the ice and injured his lower back" and complained of numbness and pain in his right leg with "radiation down the right leg"; and (2) CMC emergency room records of July 20, 1998 reflecting that Bodnar "was a restrained driver in a very large vehicle which was struck from behind", complained of "right-sided neck pain and lower back pain," and was diagnosed with "acute cervical strain and acute [lumbosacral] strain from a motor vehicle accident." (Report of Thomas J. Allardyce, M.D. dated 6/20/11, p. 5). The lumbosacral spine x-ray that was performed on January 27, 1997 and the cervical and lumbar spine x-rays that were conducted on July 20, 1998 were all interpreted as normal. (*Id.*). There is no indication in Dr. Allardyce's report that the radiographic studies from 1997 and 1998 revealed any degenerative findings or disc disease. (*Id.*, pp. 1-7).

In addition, Dr. Allardyce notes in his report that on January 22, 2007, Bodnar "complained of lateral neck pain" and "severe pain in the left trapezius when he was drying his hair" and was prescribed "Skelaxin." (*Id.*, p. 5). Dr. Allardyce further states that Bodnar's medical records indicate that on April 7, 2009, he complained of "lower back pain at night; it feels like he has to go to the

bathroom." (*Id.*). Dr. Allardyce does not identify any other instances where Bodnar complained of neck or back pain or received treatment for such an ailment during the almost eleven year period between July 20, 1998 and the date of the instant accident on May 14, 2009. (*Id.*, pp. 1-7).

Dr. Allardyce reviewed Bodnar's radiographic studies and opined that the cervical spine x-rays of September 26, 2009 demonstrate degenerative disc disease and that the cervical MRI dated November 3, 2009 "shows degenerative changes throughout." (*Id.*, pp. 5-6). He interpreted Bodnar's lumbar MRI of May 21, 2009 as "reveal[ing] disc desiccation with end plate changes and slight collapse at L5-S1" and "evidence of facet hypertrophy," but "[n]o evidence of acute herniation." (*Id.*, at p. 5). In the diagnosis portion of his report, Dr. Allardyce opines:

After reviewing the history, physical and medical records available to me, the most accurate diagnosis in the prospective record is contusion of the left ribs and left hip. The patient complained of left shoulder and hip pain. The patient had pre-existing neck and back arthritis. He also had pre-existing neck and back symptoms. Low back symptoms date back to 1/27/97 when he developed right leg pain after a fall. He also was evaluated for neck pain and treated with Skelaxin on 1/22/07. There are no symptoms recorded in the prospective record immediately prior to the car accident. The MRI of the neck and lumbar spine post 5/14/09 injury showed no acute findings. The treatment should be over the counter anti-inflammatories and avoiding all invasive forms of treatment since they are all going to predictably fail.... The treatment for 12 weeks after the injury is appropriate and necessary.

The injury sustained in the 5/14/09 accident which were (sic) documented in the ER should not continue to cause pain. Natural resolution should be 12 weeks. There are no orthopedic restrictions on him as a result of the 5/14/09 motor vehicle accident. He will not require any future treatment as a result of the 5/14/09 accident....

(*Id.*, pp. 6-7).

Dr. Allardyce states that Bodnar "had pre-existing neck and back arthritis" as presumably reflected by the degree of degenerative changes indicated on Bodnar's 2009 MRI scans, which arthritic findings arguably may account for his pain more than twelve weeks after the accident on May 14, 2009. However, Dr. Allardyce does not conclude that Bodnar's current symptomatology is causally related to the injuries that he suffered in 1997 and 1998. As noted above, other than an isolated instance of neck pain in January 2007 and low back discomfort in April 2009, Bodnar's treatment records are devoid of any neck or back complaints or treatment during the 130 month period between July 20, 1998 and May 14, 2009. Ostensibly for that reason, Dr. Allardyce has not opined that Bodnar's present back complaints are traceable to his fall on January 27, 1997 or that his neck symptoms are attributable to his automobile accident on July 20, 1998.

In a personal injury suit, [a] plaintiff need not exclude every possible explanation and 'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his

negligence."' *Jeter v. Owens-Corning Fiberglass Corp.*, 716 A.2d 633, 637 (Pa. Super. 1998) (quoting *Majors v. Brodhead Hotel*, 416 Pa.265, 273, 205 A.2d 873, 878 (1965)). Dr. Allardyce's opinions conceivably furnish the jury with a basis for finding that Bodnar's pre-existing degenerative disc disease is a factual or contributing cause of Bodnar's current neck and back symptomatology. However, neither Dr. Allardyce nor any other medical expert provides any evidentiary support for the conclusion that either the 1997 fall or the 1998 accident "would have produced the injury complained of independently of [defendant's] negligence." Pa. SSJI (Civ.) No. 7.90 (4th Ed. 2011). As the official subcommittee note accompanying the Pennsylvania Suggested Standard Civil Jury Instruction on "other contributing causes" has cautioned:

> Although rulings on the admissibility of evidence are left largely to the discretion of the trial judge, a preliminary determination must first be made to ascertain if such evidence of prior complaints is to be connected by the defendant to the complaints alleged to have originated from the defendant's conduct; otherwise such evidence would be irrelevant and prejudicial. *Papa v. Pittsburgh Penn Ctr. Corp.*, 421 Pa. 228, 218 A.2d 783 (1996). The mere assertion by a tortfeasor that a plaintiff had prior complaints of a back ache, for example, is not probative evidence necessarily. Where, for example, a plaintiff alleges a herniated disc and there is evidence of prior back complaints, such prior complaints should be excluded from evidence unless the defendant's evidence furnishes the jury with an adequate basis for finding that independent of the defendant's negligence, the plaintiff's condition

would be the same today. Short of such showing by the defendant, such evidence would be inadmissible.

*Id.*, Subcommittee note.

The defense has not adduced any evidence that would provide the jury with sufficient ground for finding that independent of the defendants' negligence, Bodnar's neck and back condition and complaints would be the same today due to his 1997 fall or 1998 automobile accident. Absent such causal proof, any evidence concerning that earlier fall and accident is not properly "connected to the complaints at issue" and must therefore be precluded "as irrelevant and prejudicial." *Odato*, supra; *DeVita*, supra. Thus, the plaintiffs' motion to preclude evidence of Bodnar's 1997 slip and fall and 1998 accident will be granted.[1]

And now, June 11, 2012, upon consideration of "plaintiffs' motion in limine to preclude evidence of plaintiff Michael Bodnar's prior accidents as irrelevant and unduly prejudicial" and the exhibits and memoranda of law submitted by the parties, and based upon the reasoning set forth above, it is hereby ordered and decreed that plaintiffs' motion in limine is granted and that defendants are barred from referencing or introducing evidence of plaintiff Michael Bodnar's slip and fall on January 27, 1997 and automobile accident on July 20, 1998, including any medical treatment received at the Community Medical Center on those dates.

---

1. Plaintiffs have not filed a motion in limine seeking to prohibit the defense from referencing Bodnar's 2007 complaints of neck pain and 2009 history of lower back discomfort. To be admissible at trial, evidence of those prior complaints must be adequately "connected" to Bodnar's present symptoms by Dr. Allardyce or some other expert witness.