# Moritz v. Horace Mann Property & Casualty Insurance Co.

C.P. of Lackawanna County, No. 13 CV 544

*John M. Mulcahey*, for plaintiffs.
*Richard Polacheck*, for defendant.

NEALON, *J.*, Nov. 5, 2014—

## ORDER

Plaintiffs, Cynthia Moritz ("Moritz"), and her husband, George Moritz, have commenced this action against their insurer, Horace Mann Property & Casualty Insurance Company ("Horace Mann"), seeking underinsured motorist (UIM) benefits for injuries and losses that Moritz suffered in an automobile accident. (Docket entry no. 1). Moritz has collected the tortfeasor's liability insurance policy limits of $15,000.00, and seeks to recover UIM benefits from Horace Mann for her damages which exceed the tortfeasor's policy limits of $15,000.00. (*Id.* at ¶¶6-15, 17-19, 21-22).

By order dated July 9, 2014, this matter was scheduled for a jury trial commencing on November 12, 2014, and in

anticipation of that trial, Horace Mann has filed a motion in limine to preclude Moritz from introducing testimony from Varsha A. Desai, BSN, RN, CNLCP, LNCC, whose Life Care Plan report dated June 27, 2014, was provided to defense counsel on July 1, 2014. (Docket entry nos. 23, 25). Moritz has filed two motions in limine seeking (1) to prohibit the defense from introducing evidence of Moritz's pre-accident hip condition which was not injured in the accident; and (2) to bar the defense medical expert, Peter A. Feinstein, M.D., from offering testimony regarding the credibility of Moritz. (Docket entry nos. 29, 31). The parties presented oral argument on their respective motions in limine during the final pre-trial conference on October 27, 2014, and those motions are now ripe for resolution.

## Factual Background

Moritz was injured in an automobile accident that occurred on August 26, 2010, when an underinsured motorist crossed into Moritz's lane of travel, struck Moritz's vehicle and forced it off the roadway and into an embankment. (Joint pre-trial order at ¶6(a)). Moritz asserts that as a result of the accident, she suffered a right shoulder rotator cuff tear, a comparable injury to her left shoulder, a ruptured long head of the right biceps tendon, a subacute fracture of the vertebral body at T1, and an aggravation of cervical degenerative disc disease. (*Id.* at pp. 6-7). Moritz underwent arthroscopic repair of the right rotator cuff tear, which surgery also included "repair of two tendons using seven anchors." (*Id.* at p. 8). Her treating physician has indicated that Moritz is also a candidate for left shoulder surgery, and Varsha A. Desai has authored a Life Care Plan report estimating the projected cost of

Moritz's future medical care. (*Id.*).

Horace Mann retained Dr. Peter Feinstein to conduct a medical examination of Moritz pursuant to Pa.R.C.P. 4010. In his report dated May 21, 2014, Dr. Feinstein claims that Moritz denied receiving medical treatment for shoulder or neck pain prior to the accident on August 26, 2010, and states that "[t]his would be patently untrue, given the medical records reviewed and documented." (Docket entry no. 29, Exhibit A at p. 3). Dr. Feinstein opines that Moritz suffered a "cervical whiplash injury" and "right rotator cuff partial thickness to full thickness tear in the context of clearly defined preexisting degenerative changes," but also concludes that she "has made a full and complete recovery from those injuries." (*Id.* at pp. 6-7). In addition to stating that Moritz's continuing symptomatology is attributable to "longstanding degenerative and arthritic issues in the areas of ongoing symptoms of which she complains," Dr. Feinstein opines that her accident-related injuries would have resolved within "six weeks to three months." (*Id.* at pp. 1,6-7). On July 3, 2014, Dr. Feinstein authored a supplemental report responding to the Life Care Plan opinions and calculations of Ms. Desai. (Docket entry no. 34, Exhibit A).

In this UIM action, Moritz seeks to recover damages for future medical expenses and past and future non-economic loss, but she has not advanced a claim for past or future loss of income or earning capacity, nor does she contend that she is vocationally disabled. (Joint pre-trial order at pp. 7-8). Moritz alleges injuries to her neck and shoulders, and does not contend that she suffered any type of a hip injury in the accident. (Docket entry no. 1 at ¶ 8). Additionally, Horace Mann's medical expert, Dr.

Feinstein, made no note of any hip problems or issues during his physical examination of Moritz, and, in fact, specifically reported that "[t]here was no pain to internal or external rotation of the hips radiating to the buttocks, groin or SI joint regions." (Docket entry no. 29, Exhibit A at p. 4).

Plaintiff's Life Care Plan Expert

Horace Mann's motion in limine requests "an order precluding [Moritz]...from entering any evidence and/or testifying to the Life Care Plan authored by Varsha Desai, BSN, RN, CNLCP, LNCC, dated June 27, 2014." (Docket entry no. 23 at p. 3). Horace Mann contends that Moritz violated Lacka. Co. R.C.P. 214(b) by producing the Life Care Plan report after filing a Certificate of Readiness, as a result of which Horace Mann has been prejudiced by "the untimely report."[1] (Docket entry no. 24 at pp. 3-4). Moritz maintains that the Life Care Plan report was produced more than four months prior to the start of trial, such that Horace Mann "has been provided sufficient time to prepare a defense to the Life Care Plan." (Docket entry no. 34 at p. 4). Moritz further submits that any alleged prejudice "has already been cured as evidenced by the July 3, 2014, expert report of Peter A. Feinstein, M.D., commenting on the Life Care Plan." (*Id.*).

Pennsylvania Rule of Civil Procedure 4003.5 governs the discovery of expert witness information, and permits

---

1. Local Rule 214(b) provides that "[n]o Certificate of Readiness may be filed until all discovery in the case has been completed," and the prescribed Certificate of Readiness form in our local rules contains an attestation by counsel "that all discovery in the case has been completed" and "the case is ready in all respects for trial." Lacka. Co. R.C.P. 214(b), Form 7.

a party to request and receive an expert report or verified interrogatory answer setting forth the substance of the facts and opinions to which the expert will testify, as well as a summary of the grounds for each opinion. *See* Pa.R.C.P. 4003.5(a)(1). Rule 4003.5(b) states that "[a]n expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action," unless "the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party," in which event "the court may grant a continuance or other appropriate relief." Pa.R.C.P. 4003.5(b). "The sanction authorized by Rule 4003.5 is not mandatory," and "when a discovery violation occurs as a result of a failure to identify an expert witness, the presiding court must balance the facts and circumstances of each case to determine the prejudice to each party." *Corrado v. Thomas Jefferson University Hospital*, 790 A.2d 1022, 1032 (Pa. Super. 2001).

The "imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court, as is the severity of the sanctions imposed." *Anthony Biddle Contractors. Inc. v. Preet Allied American Street. LP*, 28 A.3d 916, 926 (Pa. Super. 2011); *Fratzola v. Klepadlo*, 26 Pa. D. & C.5th 533, 538 (Lacka. Co. 2012). The factors to be considered in determining whether to exclude an expert's testimony are: (1) the prejudice or surprise in fact to the party against whom the witness will testify; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the exclusionary rule would disrupt the orderly and efficient trial of the case or other cases; and (4) the bad faith or willfulness on the part

of the defaulting party. *City of Philadelphia v. Fraternal Order of Police Lodge No.5 (Breary)*, 604 Pa. 267, 285-286, 985 A.2d 1259, 1270 (2009) (quoting *Feingold v. SEPTA*, 512 Pa. 567, 574, 517 A.2d 1270, 1273 (1986)). "In the absence of bad faith or willful disobedience of the rules, the most significant considerations are the importance of the witness's testimony and the prejudice, if any, to the party against whom the witness will testify." *Jacobs v. Chatwani*, 922 A.2d 950, 962 (Pa. Super. 2007), *app. denied*, 595 Pa. 708, 938 A.2d 1053 (2007).

In the case at bar, Horace Mann does not allege, nor does the record reflect, any bad faith or willfulness on the part of Moritz in producing the Life Care Plan on July 1, 2014. By virtue of the fact that the Life Care Plan was produced four and one-half (4 1/2) months prior to trial, Horace Mann clearly had the ability to cure any resulting prejudice. *See Curran v. Stradley, Ronan, Stevens & Young*, 361 Pa. Super. 17, 31, 521 A.2d 451, 457 (1987) (holding that since plaintiff "was notified of the witness's identity almost two weeks in advance of trial and could have used that time to investigate the qualifications of Stradley's expert," plaintiff's failure to do so "mitigates any real prejudice caused by Stradley's untimely disclosure."); *Silverstein v. Mt. Airy Family Practice*, 2008 WL 2214632, at *4 (Phila. Co. 2008) (plaintiff failed to demonstrate requisite prejudice to warrant preclusion of defense expert's testimony since plaintiff's counsel received expert report sixteen days before start of trial), *aff'd*, 972 A.2d 570 (Pa. Super. 2009), *app. denied*, 603 Pa. 695, 983 A.2d 729 (2009). Indeed, Horace Mann did in fact cure any proffered prejudice by securing a supplemental report from Dr. Feinstein responding to the Life Care Plan.

Although we do not condone Moritz's violation of Lacka. Co. R.C.P. 214(b) by filing a Certificate of Readiness prior to producing an additional expert report, and would impose sanctions for such conduct in different circumstances, preclusion of the expert testimony and report of Varsha A. Desai is not justified in light of the absence of any incurable prejudice to the defense. Therefore, based upon the importance of that expert's testimony and the lack of any prejudice resulting from the belated production of her report, Horace Mann's motion in limine will be denied. *See Jacobs*, 922 A.2d at 962 ("[W]e note that to preclude the testimony of a witness is a drastic sanction, and it should be done only where the facts of the case make it necessary."); *Kurian ex rel. v. Anisman*, 851 A.2d 152, 162 (Pa. Super. 2004) ("[P]reclusion of testimony is a drastic sanction, and it should be done only where the facts of the case make it necessary; the prejudice may not be assumed.").

Plaintiff's Pre-existing Hip Complaints

In Moritz's first motion *in limine*, she notes that she has "had hip issues throughout her entire life and fell a few months prior to the automotible accident and injured her hip." (Docket entry no. 31 at ¶7). Moritz also states that she "underwent a septoplasty" for a deviated nasal septum and "experienced a syncopal episode after the automobile accident." (*Id.* at ¶ 8). Since Moritz "has not alleged that she suffers from any injury to or pain in her hip as a result of the August 26, 2010, automobile accident," she submits that any evidence regarding her "prior hip injuries and pain and her septoplasty and syncopal episode must be precluded as irrelevant." (*Id.*, at ¶ 13).

Horace Mann agrees that Moritz's septoplasty and syncopal episode are irrelevant, but contends that it should be allowed to introduce evidence of Moritz's prior hip complaints. (Docket entry no. 37 at p. 2). Horace Mann avers that the parties' pre-trial discovery "revealed that [Moritz] has experienced hip problems her entire life and prior to the 08/26/2010 motor vehicle accident, and that she fell resulting in an injury to her hip before the motor vehicle accident." (*Id.* at pp.4-5). In light of Moritz's claim that she "can no longer hunt and fish" or "perform household chores" due to her shoulder and neck injuries, Horace Mann argues that evidence of Moritz's pre-existing hip problems "is surely relevant" to the issue of "whether or not some of these activities that she can no longer do are also affected by her hip problems which she has had all of her life and prior to the accident in question." (*Id.* at p. 5).

To be admissible, "evidence of previous medical complaints must be connected to the complaints at issue, and if it is not, the trial court should exclude the evidence as irrelevant and prejudicial." *Odato v. Fullen*, 848 A.2d 964, 966 (Pa. Super. 2004) ("Since the previous medical complaints of left-shoulder pain were connected to the medical complaint at issue, we find the evidence relevant, and we further find no abuse of discretion or error of law committed by the trial court in denying the [plaintiffs'] motion *in limine*."), *app. denied*, 580 Pa. 698, 860 A.2d 124 (2004); *DeVita v. Durst*, 167 Pa. Cmwlth. 105, 113-114, 647 A.2d 636, 640 (1994) (evidence of plaintiff's prior emotional problems and anti-anxiety drug prescription was admissible because it "bore a direct connection to the allegations made by [plaintiff] concerning her emotional

disability from the accident."), *app. denied*, 540 Pa. 606, 655 A.2d 993 (1995). As the court in *Papa v. Pittsburgh Penn-Center Corp.*, 421 Pa. 228, 218 A.2d 783 (1966) cogently observed, "[t]estimony concerning any prior fall [i]s not admissible for any purpose unless the injuries from that alleged accident could be connected to those claimed in the present suit, so as to raise the inference of a pre-existing condition." *Id.*, 218 A.2d at 789. *See also, Valentine v. Acme Markets. Inc.*, 455 Pa. Super. 256, 261-262, 687 A.2d 1157, 1160 (1997) (trial court erred by allowing evidence of plaintiff's two prior falls since "[t]here is also no testimony that [plaintiff] suffered injuries in his two prior falls that are similar to the injuries he suffered in this fall."); *Bodnar v. Mesko*, 26 Pa. D. & C.5th 85, 93 (Lacka. Co. 2012) (precluding evidence of plaintiff's prior slip and fall incident and automobile accident on the ground that such evidence "is not properly 'connected to the complaints at issue' and must therefore be precluded 'as irrelevant and prejudicial.'" (quoting *Odato, supra*)).

Horace Mann has not demonstrated that Moritz's lifelong hip problems are "connected to the complaints at issue" in this case. Moritz does not allege any accident-related injury to her hip or a traumatic aggravation of that pre-existing hip condition. Horace Mann's own expert, Dr. Feinstein, states in his report that Moritz experienced "no pain to internal or external rotation of the hips" during his examination of her. Moreover, the record reflects that prior to the accident on August 26, 2010, Moritz engaged in certain outdoor and household activities notwithstanding her longstanding hip condition. Consequently, Moritz's prior hip complaints and injury

are not properly "connected to" the claimed injuries in this case, and any such evidence will be excluded "as irrelevant and prejudicial." *See Odato*, 848 A.2d at 966; *Bodnar*, 26 Pa. D. & C.5th at 93.

Dr. Feinstein's Credibility Commentary

Moritz's second motion in limine seeks to bar Dr. Feinstein from stating, as he did in his report of May 21, 2014, that Moritz's alleged denial of pre-accident treatment for shoulder or neck pain is "patently untrue, given the medical records reviewed and documented." (Docket entry no. 29 at ¶ 8). Citing *Com. v. Seese*, 512 Pa. 439, 443, 517 A.2d 920, 922 (1986) and *Com. v. O'Searo* 466 Pa. 244, 228-229, 352 A.2d 30, 32 (1976), Moritz argues that "[i]t is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness's credibility." (*Id.* at ¶ 9). Horace Mann counters that Moritz "cites cases which involve criminal matters which are inapplicable to the case at hand." (Docket entry no. 36 at p. 5). Horace Mann posits that the proffered testimony by "Dr. Feinstein is simply outlining a fact that the records reflect otherwise, and that fact would be essential for the trier of fact to determine the credibility of the witness in assessing her overall testimony." (*Id.* at p. 6).

Under the Pennsylvania Rules of Evidence, expert testimony is permitted when the expert's scientific, technical, or other specialized knowledge is beyond that of the average layperson, and will help the fact-finder understand the evidence or determine a fact in issue. *See* Pa.R.E. 702(a)-(b). Earlier this year, the Supreme Court of Pennsylvania underscored that it has "consistently

maintained that a lay jury is capable of determining whether a witness is lying, and thus expert testimony is not permissible as to the question of witness credibility." *Com. v. Alicia*, 92 A.3d 753, 760 (Pa. 2014) (holding that expert testimony concerning the phenomenon of "false confessions" would impermissibly invade the jury's exclusive role as the arbiter of credibility). *See also Kozak v. Strath*, 515 Pa. 554, 562, 531 A.2d 420, 424 (1987) (stating that "expert testimony must be carefully scrutinized because issues...of credibility are for the jury, not the expert."). In this regard, the Supreme Court has long recognized that:

> The veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.

*Alicia*, 92 A.3d at 761 (quoting *Com. v. Davis*, 518 Pa. 77, 541 A.2d 315, 317 (1988)).

Our decisional precedent in criminal cases, *see Alicia*, supra, and civil litigation, *see Kozak*, *supra*, clearly states that expert testimony is not admissible on matters of credibility which are within the common knowledge of the average layperson. It is of no consequence that most of the relevant appellate authority is set forth in "cases which involve criminal matters" since those rulings establishing the permissible parameters of expert witness testimony have equal application in criminal and civil proceedings.

*See Com. v. Walker*, 92 A.3d 766, 788 (Pa. 2014) ("Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience."); *Auerbach v. Philadelphia Transp. Co.*, 421 Pa. 594, 604, 221 A.2d 163, 171 (1966) (same). Inasmuch as the credibility of Moritz is reserved for the jury, Dr. Feinstein may testify that Moritz denied any pre-accident treatment, but will be barred from stating that Moritz's alleged comments are "patently untrue." Accordingly, Moritz's motion in limine to preclude Dr. Feinstein from offering any testimony concerning her credibility will be granted.

And now, this 5th day of November, 2014, upon consideration of the parties' motions in limine, memoranda of law, and oral argument on October 27, 2014, and based upon the reasoning set forth above, it is hereby ordered and decreed that:

1. The "motion in limine of defendant Horace Mann Property & Casualty Company" to preclude any Life Care Plan testimony by Varsha A. Desai, BSN, RN, CNLCP, LNCC, is denied;

2. "Plaintiffs' motion in limine # 1 to Preclude Any Evidence of Unrelated Medical Conditions Suffered by Cynthia Moritz" is granted; and

3. "Plaintiffs' motion in limine # 2 to Preclude defendant's Expert, Dr. Peter Feinstein, From Offering Testimony Regarding the Credibility of Plaintiff, Cynthia Moritz" is granted.